482 A.2d 611

**COMMONWEALTH of Pennsylvania**

v.

**Gerald KENON, Appellant.**

Superior Court of Pennsylvania.

Submitted June 8, 1984.

Filed Sept. 21, 1984.

Petition for Allowance of Appeal Denied March 4, 1985.

William J. Perrone, Norristown, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

HESTER, Judge:

In late morning of October 27, 1981, Carey Kressler was driving a delivery truck for his employer, Stroehman Bakery. He double-parked on the twenty-one hundred block of Dauphin Street in the City of Philadelphia in order to make a delivery.

As Kressler walked to the inside rear of the truck to remove stock, appellant, Gerald Kenon, entered the truck from the driver's side. Armed with a thirty-eight caliber

automatic pistol, appellant stopped within three feet of Kressler and said, "Give me your money or I'll kill you." Following Kressler's surrender of approximately $80.00 in cash, appellant fled.

Attracted by Kressler's unlawfully parked vehicle, Officers Brown and Armstead of Philadelphia's Anticrime Unit had driven their police vehicle alongside Kressler's truck as appellant alighted from the driver's side and ran from the scene. Both officers pursued appellant in their vehicle for a short distance until he eluded them by running through an empty lot. The officers returned to Kressler's truck. Shortly thereafter, Officer Armstead departed to secure the area while Brown remained at the truck with Kressler.

As Brown and Kressler were standing alongside the truck, appellant walked by. Brown radioed Armstead and waited for his arrival as it was the Unit's policy to discourage arrests by one officer. The officers apprehended appellant within a short time at 22nd and Diamond Streets.

As a result of this incident, appellant was charged with robbery, receiving stolen property, recklessly endangering another person, firearms not to be carried without a license, theft, terroristic threats, possessing instruments of crime and carrying firearms on public streets or public property in Philadelphia.

Following a jury trial, appellant was found guilty of possessing instruments of crime, carrying firearms on public streets and robbery. Post trial motions in arrest of judgment and for a new trial were denied. Appellant was sentenced to a term of imprisonment of five to ten years on the robbery bill, and to a consecutive term of two to four years on possessing an instrument of crime. Sentence was suspended on the conviction for carrying firearms on public streets. This appeal was taken from the judgment of sentence.

Appellant's first argument is that counsel was ineffective for not demanding that a court-ordered line-up be held prior to an in-court identification, and for not filing a pre-trial

motion to suppress the victim's in-court identification. A line-up, ordered by the Philadelphia Police Department, was scheduled for November 25, 1981, twenty-one days prior to the preliminary hearing. The line-up was cancelled due to the fact that the prison in which appellant was held was under a lock up until a missing prisoner was found. The line-up was not re-scheduled; therefore, appellant was identified in court for the first time. Appellant complains that the absence of a line-up made the first in-court identification at the preliminary hearing suggestive and tainted subsequent in-court identifications.

An accused's right to a line-up and counsel's alleged ineffectiveness for not demanding a line-up were discussed by this Court in *Commonwealth v. Davis*, 293 Pa. Super. 447, 439 A.2d 195 (1981);

> To begin with, an accused does not have a constitutional right to a line-up and the suggestiveness of a courtroom identification is only one factor to be considered in determining the reliability of the identification evidence. Moreover, this jurisdiction has "declined to accept a *per se* rule that a pre-trial, pre-hearing line up is mandatory in all cases." *A fortiori,* counsel's failure to request a lineup or failure to object to identification testimony is not *per se* ineffective assistance. Because a review of the totality of the circumstances revealed that the identification testimony was reliable, and further revealed that even if the preliminary hearing was suggestive, the in-court identification had an independent basis, a lineup or objection would have been fruitless. (Citations omitted).

*Id.,* 293 Pa.Superior Ct. at 455, 456, 439 A.2d at 200. Irrespective of the possible suggestiveness surrounding the in-court identifications, numerous factors uphold the reliability of the identifications. Appellant was first viewed by Kressler during the robbery. Although this confrontation lasted less than a minute, Kressler was within three feet of appellant and could identify him as a black male wearing a hooded sweatshirt, fatigue jacket, khaki trousers and black

desert boots. Kressler also observed appellant brandishing a thirty-five caliber handgun.

As Officers Brown and Armstead drove their unmarked police vehicle abreast of Kressler's truck, they observed appellant jump from the driver's side and run eastwardly on Dauphin Street. The officers followed appellant in their vehicle along Dauphin Street and then northwardly on Van Pelt Street.

That particular chase terminated when appellant ran through an empty lot on Van Pelt Street, prohibiting the officers from pursuing him in the vehicle. During this first pursuit, the officers observed appellant's face on two occasions. On one occasion, his entire face and head were observed as the sweatshirt hood fell to his shoulders. The officers also noted appellant's camouflaged fatigue jacket, hooded sweatshirt, khaki pants and black desert boots.

As appellant ran through the empty lot, he threw the handgun. Officer Brown retrieved it, and Kressler later identified it as the weapon used in the hold-up. Officer Armstead recovered a fatigue jacket and sweatshirt in the immediate vicinity. They too were identified by Kressler as having been worn by appellant.

Following Brown's return to Kressler, while Armstead continued his search, appellant returned to Dauphin Street and walked by Brown and Kressler on the opposite side. Both Brown and Kressler recognized him, although he was no longer wearing the jacket and sweatshirt. Brown immediately summoned Armstead to the scene. Upon Armstead's arrival, the two officers began their second joint pursuit. They apprehended appellant shortly thereafter.

■■■ Although the line-up, as requested by the Philadelphia Police Department, did not occur, the in-court identifications were supported by an independent basis which negated the suggestiveness of the in-court confrontations. Therefore, demanding a line-up or moving to suppress the identifications would have been futile, failure of which to pursue is not ineffectiveness. *Commonwealth v. Weathers*

*El,* 485 Pa. 28, 400 A.2d 1295 (1979); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977). During the post-trial motions' hearing, defense counsel recognized the inefficacy of a line-up:

> The same officer testified, Brown, as I recall, that he saw Mr. Kenon jump over the Strohmann (sic) Bread truck and drop the gun and walk back in front of him.
>
> He also arrested Mr. Kenon ten minutes later two blocks away.
>
> You are talking about a post incident confrontation. I don't think a lineup would have been in order from Officer Brown.
>
> I assumed Mr. Kressler saw him as well.

(N.T. March 29, 1983, p. 28).

Next, appellant argues that counsel was ineffective for failing to introduce police photographs of him and for failing to prominently display him at both the suppression hearing and trial. According to appellant, counsel acknowledged appellant's facial scars, yet did not attempt to discredit Kressler, who, despite being within three feet of appellant inside the bakery truck, testified to observing no facial scars.

First, the perceptibility of the scars was in doubt. During the post-verdict motions hearing, the court took judicial notice of the absence of scars: "Let the record show that I can't see scars from here and he is about eight feet away from me." (N.T. March 29, 1983, p. 35). When pressed by post-trial counsel to have the record reflect a scar on appellant's left cheek, the court responded:

> Yes, but remember, he had a sweatshirt with a towel over his head at the time of the robbery. But on his face, I can see no scars. If you point out something to me, perhaps I may be able to see what you are talking about. But no one knew it. The picture does not show any scars.

(N.T., March 29, 1983, p. 36). Whether scars were perceptible was placed in serious question during a particular segment of the post-conviction hearing:

POST-TRIAL COUNSEL: But he (Kressler) also said that the man (appellant) had no distinguishable characteristics.

THE COURT: That is right. And I do not see any distinguishable scars on him, either.

POST-TRIAL COUNSEL: On his face there is a gash about four inches long.

THE COURT: Where is the gash on his face?

POST-TRIAL COUNSEL: This (Indicating).

TRIAL COUNSEL: No, no, no, there.

THE COURT: I don't see it from here and right now he is about seven feet away from me.

(N.T., March 29, 1983, pp. 37–38).

There is sufficient evidence to the effect that any facial scars were not easily discernible by the victim albeit appellant stood during the robbery within three feet of him for nearly one minute. First, a hood covered appellant's head. Secondly, despite having its attention drawn to the photograph and appellant's face during the post-trial hearing, the court did not detect a scar. Finally, despite their close proximity to appellant at the post-trial hearing, trial counsel and post-trial counsel could not agree as to the location of the alleged scar.

█ Appellant did not introduce sufficient evidence of facial scarring that would diminish the victim's credibility and establish counsel's ineffectiveness for failing to exhibit appellant's photograph and face to the jury and suppression court. This is true irrespective of trial counsel's post-trial admission of ineffectiveness. As the fact-finder, the post-trial court disbelieved counsel's avowed incompetence when it opined:

THE COURT: One other thing: You, know, I think you are a good lawyer, Mr. Dubrow, you are a very good lawyer. It troubles me immensely when a lawyer says I was ineffective in order to assist the defendant who has absolutely no use for you, absolutely no use for you. I think—every petition comes through, ineffective assistance of counsel. We are hearing it constantly. We are

debasing the legal profession and especially when an attorney says I was ineffective. I want to weep when I hear that, absolutely I want to weep.

(N.T., March 29, 1983, p. 38). Counsel is not ineffective where no evidence supports ineffectiveness and where counsel's admission of incompetence is discredited by the trial court.

Finally, appellant contends that the court erred in ordering him to try on the hooded sweatshirt and fatigue jacket in the presence of the jury. According to appellant, this exhibition violated his Fifth Amendment right to remain silent and his Fourteenth Amendment due process of law right to be free of inflammatory evidence.

■ First, inasmuch as demonstrative evidence is not testimonial it does not activate the right against self-incrimination. *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Commonwealth v. Richbourg,* 260 Pa.Super. 438, 394 A.2d 1007 (1978). Secondly, courtroom exhibits of this type are left to the far-reaching discretion of the trial court; accordingly, appellate review is restricted. *Commonwealth v. Laniewski,* 427 Pa. 455, 235 A.2d 136 (1967); *Commonwealth v. Williams,* 317 Pa.Super. 456, 464 A.2d 411 (1983); .

■ The probative value of having appellant try on the clothing during trial outweighed potential prejudice. In pressing the identification issue, appellant compelled the Commonwealth to expend significant effort in substantiating the in-court identifications. The experiment displayed for the jury the extent to which appellant's head was covered by the hood. It also indicated whether the sweatshirt and jacket were properly fitted to appellant's body. We perceive no abuse of discretion in conducting a courtroom experiment for these purposes.

Judgment of sentence affirmed.