COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert EDWARDS, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 14, 2000.

Filed Nov. 3, 2000.

---

384 ■

Joyce Ullman, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, President Judge, CERCONE, President Judge Emeritus, and HESTER, J.

CERCONE, President Judge Emeritus:

¶ 1 Appellant, Robert Edwards, appeals from the judgment of sentence imposed after a jury convicted him of robbery and possession of an instrument of crime.[1] After review, we affirm.

1. 18 Pa.C.S.A. §§ 3701 and 907.

¶ 2 On January 8, 1995, around 2:00 p.m., Mary Elizabeth Kyle was working as a cashier inside of Victor's Variety Store on 65th and Dicks Streets in Philadelphia. N.T. Trial, 1/29/97, at 33. A friend of Ms. Kyle's, one Kimberly Felder, was also in the store at that time as well. Ms. Kyle testified at Appellant's trial that the Appellant walked into the store, approached the counter and purchased some cigarettes. *Id.* at 34–35. After buying the cigarettes, the Appellant left the store. *Id.* at 36.

¶ 3 Ms. Kyle testified that approximately five (5) minutes later the Appellant came back into the store, pulled a small automatic handgun out of his pocket and demanded a box of Marlboros and the money in the register. *Id.* at 36–39. Ms. Kyle recounted that she complied with Appellant's request and gave him approximately $200.00 which was in the register. *Id.* at 38. After receiving the money, Appellant fled from the store. *Id.* The police were summoned to the store and Ms. Kyle gave them a statement in which she described the robber. *Id.* at 39–40.

¶ 4 Three weeks later on January 29, 1995, Officer Ronald Pigford was summoned to Clover's Department Store on Island Avenue in Philadelphia in response to a call from the store manager, a Mr. Hugh Organ. Organ testified that he had been speaking to the Appellant when a "scuffle" ensued. *Id.* at 88. During the scuffle, a gun fell out of Appellant's waistband, which prompted Organ to call the police. *Id.* Pigford arrived at the store and transported Appellant to the police station.

¶ 5 A detective from the Philadelphia Police Department then showed Ms. Kyle and Ms. Felder a photographic array of eight (8) pictures which included the Appellant's. *Id.* at 40, 135. Both Kyle and Felder picked Appellant from the array as the robber. *Id.* at 41, 149. The detective also showed both Ms. Kyle and Ms. Felder

a picture of the gun recovered by Officer Pigford which had fallen out of Appellant's waistband. *Id.* at 45–46, 136. Both Kyle and Felder identified the gun as the one which was used in the robbery. *Id.* at 45–46, 142–143.

¶ 6 As a result, Appellant was arrested and charged with robbery and possession of an instrument of crime. A preliminary hearing was held at which time both Ms. Kyle and Ms. Felder made an in-court identification of the Appellant as the robber. The case then proceeded to a jury trial at the conclusion of which Appellant was found guilty.

¶ 7 On April 24, 1997 the Trial Judge sentenced Appellant to a term of two (2) to four (4) years imprisonment and a concurrent term of five (5) years probation. Appellant did not file a timely notice of appeal. Instead, he sought reinstatement of his delinquent appellate rights *nunc pro tunc* via the PCRA. The Trial Court granted this request and reinstated Appellant's direct appeal rights by order issued July 16, 1999.

¶ 8 In this appeal to our Court Appellant presents two issues for our consideration:

1. Did the Trial Court abuse its discretion and/or commit an error of law in overruling defendant's Motion in Limine and allowing the Commonwealth to introduce into evidence a gun confiscated from the defendant three weeks after the subject offense, in connection with a subsequent shoplifting charge and PIC charge, the testimony of the security employee of the store where the shoplifting and gun charges occurred concerning the circumstances surrounding his confiscation of the gun, and the testimony of the police officer concerning taking the defendant into custody, where the gun charge was still an open charge, in violation of the defendant's rights under the Fifth Amendment of the United States Constitution, and where the inflammatory and prejudicial impact of this evidence far outweighed its probative value?

2. Was the defendant denied effective assistance of counsel when his Preliminary Hearing counsel failed to preserve a line-up request of the two Commonwealth eye witnesses in advance of an overly suggestive in-Court identification, where the subject robbery had occurred two months previous, where there had only previously been a photo identification, the observation time had been less than five minutes, and the description given by the witnesses to the police were very general, to suggest that there was not an independent basis for a positive in-court identification; and, was defendant denied effective assistance of trial counsel because trial counsel failed to file a pre-trial motion to suppress identification testimony?

Appellant's Brief at 2.

¶ 9 Appellant first contends that the Trial Court erred by allowing the Commonwealth to introduce evidence of the gun confiscated from him after the incident at Clover's Department Store. Appellant was charged with shoplifting and firearms related offenses as a result of that incident. He had been acquitted of shoplifting but convicted of the firearms related offenses in Philadelphia Municipal Court. Appellant had appealed for a trial de novo on those charges. Consequently, at the time of trial in the instant matter, Appellant was still awaiting trial on those charges

■ ¶ 10 Appellant maintains that the gun should not have been admitted as evidence in his trial in the present case since the result of its admission was to compel him to testify under oath with regard to the circumstances of his possession of it. Specifically Appellant avers that

[b]y testifying in his own defense, which was his Constitutional privilege to do, [Appellant] was forced to either agree that the gun was confiscated from his possession as alleged by the security employee, in which case he would be directly incriminating himself so far as

the open gun charges were concerned, or deny that the gun was confiscated from him in the manner as described by the store security employee, which, either way had the potential of being self-incriminating, or remain silent on the subject and thus, give the Commonwealth the unfair advantage of arguing to the jury that the testimony of the security employee was uncontradicted and therefore credible.

Appellant's Brief at 24–25. The Appellant argues that since he was "compelled" to give testimony about the gun this was a violation of his Fifth Amendment right against self-incrimination. After review, we must disagree.

¶ 11 We note at the outset of our discussion of this issue that an appellate court may reverse a trial court's ruling on the admissibility of evidence only upon a showing that the trial court abused its discretion. *Commonwealth v. Minerd*, 562 Pa. 46, 53, 753 A.2d 225, 229 (2000); *Commonwealth v. Hawk*, 551 Pa. 71, 77, 709 A.2d 373, 376 (1998). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Commonwealth v. Hess*, 745 A.2d 29, 31 (Pa.Super.2000).

¶ 12 As our Supreme Court has noted in a prior case: "[T]he Commonwealth need not establish that a particular weapon was actually used in the commission of a crime in order for it to be introduced at trial. Rather, the Commonwealth need only show sufficient circumstances to justify an inference by the finder of fact that the particular weapon was likely to have been used in the commission of the crime charged." *Commonwealth v. Spotz*, 552 Pa. 499, 522, 716 A.2d 580, 591 (1998) citing *Commonwealth v. Thomas*, 522 Pa. 256, 273, 561 A.2d 699, 707 (1989). Thus, "[a] weapon shown to have been in a defendant's pos-

session may properly be admitted into evidence ... if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime." *Commonwealth v. Williams*, 537 Pa. 1, 20, 640 A.2d 1251, 1260 (1994). In the case at bar, the gun recovered from the Appellant during the Clover's Department Store incident and introduced at trial had been previously identified to the police by the two victims of the robbery as the *exact* one which had been used in the robbery. Hence, the Trial Court clearly did not abuse its discretion by allowing the introduction of the gun as evidence.

¶ 13 We cannot agree with Appellant's assertion that the admission of the gun into evidence in any way forcibly compelled the Appellant to offer testimony in his own defense at trial. The Fifth Amendment of the United States Constitution provides in relevant part: "No person ... shall be compelled in any criminal case to be a witness against himself." U.S.C.A. Const. Amendment 5. Thus, an accused in a criminal proceeding is absolutely protected "from being compelled to testify against himself or otherwise provide the state with incriminating evidence of a testimonial or communicative nature." *Commonwealth v. Ragan*, 438 Pa.Super. 505, 512–514, 652 A.2d 925, 929 (1995), *appeal denied*, 541 Pa. 650, 664 A.2d 540 (1995). However, nothing in the Fifth Amendment prohibits an accused from waiving this privilege and electing to voluntarily testify at trial, even if his or her sole reason for doing so is because of the evidence which the Commonwealth has presented in its case-in-chief. As the United States Supreme Court has noted:

A defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives, and that waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place

only by reason of the strength of the lawful evidence adduced against him.

*Harrison v. U.S.,* 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047 (1968); *Accord Commonwealth v. Lesko,* 553 Pa. 233, 244, 719 A.2d 217, 222 (1998).

¶ 14 It is clear from the record that Appellant voluntarily elected to waive his Fifth Amendment privilege and chose to testify. Prior to his testimony, his counsel informed the Court that Appellant wished to testify. N.T. Trial, 1/30/97, at 117. The Trial Court then colloquied the Appellant and asked if he understood that should he testify he would be subject to cross-examination. The Appellant replied that he understood, but he nevertheless still voluntarily elected to take the stand. *Id.* at 118. The Appellant was not ordered or otherwise directed to take the stand by the Trial Court. Appellant does not allege, nor do we see any instant evidence of record to show that his decision to take the stand was not made knowingly, voluntarily, and after consultation with his trial counsel. Thus, there is nothing to suggest that Appellant had been compelled to take the stand and give testimony in his own defense in violation of the Fifth Amendment to the United States Constitution.

¶ 15 The Appellant was not required to say anything in his own defense nor was he constitutionally required to offer evidence to rebut the Commonwealth's evidence. The burden of proof remained on the prosecution at all times to prove each element of its case. Had Appellant not taken the stand he would have been entitled to have the jury instructed that they could not draw any adverse inference from his decision not to testify. *See Commonwealth v. Lee,* 321 Pa.Super. 292, 294–296, 468 A.2d 485, 486 (1983) ("It is beyond the need of citation to state that a defendant in a criminal case is under no compulsion to testify and that he is entitled to an instruction that no inference may be drawn against him by the factfinder as the result of his failure to testify.") Nonetheless, Appellant elected to testify as a strategic matter, even though forewarned by the Trial Court that he would be subject to cross-examination. He cannot now claim to have been "compelled" to do so as the final choice to testify remained his and his alone. Thus, this claim must fail.[2]

2. We must note that the Commonwealth in its cross-examination of Appellant did not inquire into Appellant's possession of the gun during the January 29, 1995 incident at Clover's Department Store. It was the Trial Court that pursued this line of questioning:
[The Court]: Why did you have [the gun] with you on the 29th when you were going to Clover?
[Appellant]: It's a long story.
[The Court]: Going to Ippolito's, on the way back from Ippolito's because it was closed?
[Appellant]: It is another long story. It had to do with the conditions I was living under with William Johnson.
[The Court]: Who is the Whale?
[Appellant]: That's William Johnson.
[The Court]: Was William Johnson with you on the way to Ippolito's?
[Appellant]: Yeah.
[The Court]: In the same car?
[Appellant]: Yes.
[The Court]: And because he was with you you carried a gun?
[Appellant]: Yeah.
[The Court]: O.K.

N.T. Trial, 1/30/97, at 154.
The Trial Court's chosen line of inquiry into the Appellant's alleged possession of a gun at the time of the Clover Department Store incident was unnecessary in light of the other evidence introduced at trial. However, we note that Appellant voluntarily chose to answer the Trial Court's questions. Despite his decision to testify in his own defense with respect to the subject matters of the instant prosecution, Appellant still had the right to assert his Fifth Amendment privilege against self-incrimination with respect to the Trial Court's questions relating to his possession of the gun at the time of the Clover's Department Store incident, because of the separate outstanding criminal charges arising out of that matter. *See e.g. Commonwealth v. Camm,* 443 Pa. 253, 264, 277 A.2d 325, 331 (1971), *cert. denied,* 405 U.S. 1046, 92 S.Ct. 1320, 31 L.Ed.2d 589 (1972) (accused's waiver of privilege against self-incrimination extends only to matters within the permissible scope of cross-examination). However, Appellant waived the assertion of that privilege by failing to object and instead electing to answer the Trial Court's questions regarding

¶ 16 Next, Appellant claims that the Trial Court erred by allowing the testimony of Clover's Department Store manager Hugh Organ and Officer Pigford regarding the circumstances of the incident at the department store. Appellant avers that their testimony was inflammatory and prejudicial since it improperly suggested to the jury that the Appellant had been involved in other criminal activity unrelated to the offenses for which he was currently on trial. Once more, we are constrained to disagree.

¶ 17 The general rule in this Commonwealth is that "evidence of crimes other than those charged in the case before the jury may not be presented at trial to prove the defendant's 'criminal character' or his tendency toward committing criminal acts." *Commonwealth v. Howard*, 749 A.2d 941, 952 (Pa.Super.2000), citing *Commonwealth v. Baez*, 554 Pa. 66, 87–88, 720 A.2d 711, 721 (1998). However, "mere 'passing references' to prior criminal activity will not necessarily require reversal unless the record illustrates definitively that prejudice results." *Commonwealth v. Sattazahn*, 428 Pa.Super. 413, 433–435, 631 A.2d 597, 608 (1993), appeal dismissed, 539 Pa. 270, 652 A.2d 293 (1994). "Prejudice results where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of [another] criminal offense." *Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979); Accord *Commonwealth v. Bracey*, 541 Pa. 322, 338, n. 10, 662 A.2d 1062, 1069, n. 10 (1995); *Commonwealth v. Laughman*, 306 Pa.Super. 269, 270–272, 452 A.2d 548, 549 (1982). Thus, "[w]hen the Commonwealth introduces evidence which does not directly establish appellant's [other] criminal conduct, but which is merely suggestive of it, the operative question is whether the jury could reasonably infer from the facts presented that the accused had engaged in [other] criminal activity." *Commonwealth v. Thomas*, 361 Pa.Super. 1, 13–17, 521 A.2d 442, 449–450

the Clover Department Store incident, even

(1987), appeal denied, 516 Pa. 617, 531 A.2d 1119, citing *Commonwealth v. DeCampli*, 243 Pa.Super. 69, 75–77, 364 A.2d 454, 457 (1976).

¶ 18 In the case *sub judice*, the testimony given by Mr. Organ and Officer Pigford was carefully circumscribed by the Trial Court. In its pretrial ruling on Appellant's Motion in Limine,. the Trial Court expressly ruled that the Commonwealth could not give any testimony that would establish directly or by inference that Appellant was arrested for other offenses arising out of the incident at Clover's Department Store. N.T. Hearing, 1/7/97, at 28. Our inspection of the testimony adduced at trial by the Commonwealth reveals that the Commonwealth complied with the Trial Court's ruling and did not elicit facts from Organ and Officer Pigford to indicate that Appellant had been arrested or charged with criminal offenses in connection with that incident.

¶ 19 As recounted previously, Organ testified at trial that he had a "scuffle" with the Appellant during which the gun fell out. N.T. Trial, *supra*, 1/29/97, at 88. After the gun fell out, Organ indicated that he called police. *Id.* Organ then stated that "we had to go down and make statements." *Id.* Organ made no mention in his testimony of the arrest of Appellant by Officer Pigford.

¶ 20 Officer Pigford testified that he received a call from Clover's Department Store while on duty the day of January 29, 1995. *Id.* at 100. Officer Pigford recalled that he went to the store and that he was "assigned to transport [Appellant] to Southwest Detectives." *Id.* at 101. However, Officer Pigford did not mention to the jury that he had arrested Appellant that day nor did he indicate that any criminal charges had been filed against Appellant in connection with the incident at the store.

¶ 21 We can therefore conclude that this testimony did not expressly or by reason-

though he was under no compulsion to do so.

able implication communicate to the jury the involvement of Appellant in another criminal offense. As such, we cannot deem the carefully limited testimony of both witnesses to have been prejudicial to Appellant. *Nichols, Thomas, supra. See also Commonwealth v. Toro,* 432 Pa.Super. 383, 396–399, 638 A.2d 991, 998 (1994) (mere references in testimony to defendant's contacts with police not prejudicial); *Commonwealth v. Morris,* 522 Pa. 533, 539–541, 564 A.2d 1226, 1229 (1989) (police officer's testimony that when they brought appellant in for questioning they wanted to talk to him about "an offense in Suffolk and also a Philadelphia situation" not deemed prejudicial since remark did not expressly or by reasonable implication convey to jury that appellant had committed a prior offense, but rather at most established that he was a suspect in another crime).

¶ 22 However, even if the jury were to infer that Appellant had committed a separate criminal offense due to his possession of a gun at the department store, this consideration, in and of itself, did not prohibit the jury from learning of the circumstances of the department store incident. As our Court has said in a prior case: "[E]vidence of other crimes may be admissible when the need for such evidence outweighs its prejudicial effects, such as when offered to prove motive, intent, absence of mistake, common plan or scheme, or the identity of the person accused." *Commonwealth v. Moore,* 715 A.2d 448, 451 (Pa.Super.1998), quoting *Commonwealth v. Miles,* 545 Pa. 500, 518, 681 A.2d 1295, 1304 (1996), *cert. denied,* 520 U.S. 1187, 117 S.Ct. 1472, 137 L.Ed.2d 684 (1997).

¶ 23 Our Court had occasion to apply this principle of law to a remarkably similar evidentiary situation in the case of *Commonwealth v. Terrell,* 234 Pa.Super. 325, 339 A.2d 112 (1975). In *Terrell* the defendant had robbed a bar at gunpoint. *Id.* at 113. The bartender and his wife identified the defendant as the robber with the gun. *Id.* at 114. About a week later the police saw the defendant walking on a public street and arrested him pursuant to a warrant which had been issued in connection with the robbery. A gun was found on Appellant during the search incident to arrest. The bartender testified at trial that it was the same gun used in the robbery. Appellant was tried jointly on both the charges arising out of the robbery of the bar and for the firearms offenses arising out of his carrying of the gun on a public street.

¶ 24 On appeal from his conviction Appellant argued that it was improper for the Trial Court to consolidate trial on both sets of offenses. Our Court agreed. Relying on the principle reiterated above in *Moore,* our Court noted:

> Evidence of the firearms violations would have been admissible at a trial for the robbery because it would have corroborated evidence of appellant's identity by showing that the person suspected of committing the robbery was found a week later in possession of the weapon used in the robbery. The fact that such possession happens to constitute an independent crime would not preclude proof of possession, for the relevance of the proof would far outweigh any prejudice. The evidence would be just as damning whether it constituted a crime or not.

*Terrell,* 339 A.2d at 114–115.

¶ 25 In the instant case, the relevancy of testimony establishing that Appellant was in possession of a gun which the victims of the robbery had positively identified as the one used in the commission of the offense far outweighed any potential prejudice to Appellant which may have been created by the fact that the possession of the gun constituted an independent offense. Moreover and importantly, the Trial Court also made it abundantly clear to the jury that they were not to consider in their deliberations the fact that the Appellant's possession of a gun during the Clover's Department Store incident may have constituted an independent crime. At the

conclusion of the trial, the Court specifically instructed the jury as follows:

You have heard evidence also in this case tending to prove that the accused in this case was in possession of a weapon, which may or may not be a crime, on January 29, 1995. This is possible conduct that he's not presently on trial for, nor is he charged with. This is testimony concerning, as I said, the events in the Clover Store on January 29. That evidence is here only for a limited purpose. That is purposes of tending to show to you how the Commonwealth came into possession of the item known as and identified herein as C–1 [the gun].

This evidence must not be considered by you in any other way than for the purposes I have stated. You must not regard this evidence as showing that the defendant is either a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

If you find defendant guilty it must be because you are convinced by the evidence that you heard that he committed the crime charges for conduct on January 8, 1995 and not because you believe that because a gun was taken from him three weeks later that he is either wicked or may have committed other improper conduct or offenses.

N.T., 1/31/97, at 72–73. Thus, it is plain that the Trial Court took deliberate and careful steps to insure that Appellant was not unduly prejudiced by testimony regarding his possession of the gun at the department store.

■ ¶ 26 Appellant's final claim of error is that trial counsel was ineffective for failing to request a pretrial lineup prior to the preliminary hearing or to file a motion to suppress the robbery victims' in-court identification of the Appellant as the robber. The standard of review for a claim of ineffective assistance of counsel is well-settled. Counsel is presumed effective and the burden of proving ineffectiveness rests with the Appellant. *Common-*

*wealth v. Uderra*, 550 Pa. 389, 400, 706 A.2d 334, 339 (1998); *Commonwealth v. Burkholder*, 719 A.2d 346, 349 (Pa.Super.1998), *appeal denied*, 560 Pa. 738, 747 A.2d 364 (1999). When evaluating ineffectiveness of counsel claims our Court employs a three-pronged test:

The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. Once this threshold is met we apply the "reasonable basis" test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice.

*Commonwealth v. Rovinski*, 704 A.2d 1068, 1071 (Pa.Super.1997), *appeal denied*, 555 Pa. 707, 723 A.2d 1024 (1998) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 522–526, 645 A.2d 189, 194–195 (1994)).

¶ 27 Our Court was confronted with a similar claim of counsel's alleged ineffectiveness for failing to request a lineup in the case of *Commonwealth v. Kenon*, 333 Pa.Super. 366, 482 A.2d 611 (1984). In *Kenon*, the defendant was on trial for robbery. A lineup had been scheduled for a date prior to the preliminary hearing, however the lineup was cancelled due to an unrelated incident at the prison in which the defendant was being held. *Id.* at 613. At the preliminary hearing the robbery victim identified the defendant in court for the very first time. *Id.* The defendant was later convicted. On appeal to our Court the defendant argued that the absence of a lineup made the first in court identification

at the preliminary hearing unduly suggestive.

¶ 28 Our Court rejected that argument and wrote:

To begin with, an accused does not have a constitutional right to a line-up and the suggestiveness of a courtroom identification is only one factor to be considered in determining the reliability of the identification evidence. Moreover, this jurisdiction has "declined to accept a per se rule that a pre-trial, pre-hearing line up is mandatory in all cases." A fortiori, counsel's failure to request a lineup or failure to object to identification testimony is not per se ineffective assistance.

*Id.* at 613. Our Court went on to review the totality of the circumstances to see if there was a reliable independent basis for the in-court identification by the robbery victim. After concluding that there were evidentiary factors to support an independent basis for the in court identification, we held that trial counsel was not ineffective for failing to request a lineup or failing to make a motion to suppress the identification since both courses of action would have been futile. *Id.* at 614.

¶ 29 In assessing whether the totality of the circumstances support an independent basis for identification of a defendant as perpetrator of a crime our Court has observed:

Factors to be considered in evaluating the likelihood of misidentification in a particular instance are:

... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson v. Brathwaite,* supra, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154. See also *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).

The most important factor in the totality of the circumstances test is the opportunity of the witness to view the suspect at the time of the crime. This would seem to be particularly so when the witness was the victim, for as we have ... noted, "Whenever the victim of a crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion[.]"

*Commonwealth v. Derrick,* 322 Pa.Super. 517, 535, 469 A.2d 1111, 1121 (Pa.Super.1983) quoting *Commonwealth v. Bradford,* 305 Pa.Super. 593, 597–599, 451 A.2d 1035, 1037 (1982) (citation omitted).

¶ 30 In the case at bar, one of the victims of the robbery, Ms. Kyle, had the opportunity to observe the Appellant in a brightly lit store during the afternoon at close range. Ms. Kyle first observed Appellant for about five minutes from a distance of less than three feet away when Appellant entered the store originally to buy cigarettes. N.T. Trial, 1/29/97, at 35. Ms. Kyle then observed Appellant again under the same lighting conditions and from the same close distance when he reentered the store and walked up to the counter and demanded the money. *Id.* at 37. Ms. Kyle also immediately identified Appellant from the photographic array which she was shown by the detective during the investigation. *Id.* at 41.

¶ 31 When Appellant first entered the store to purchase the cigarettes and came to the counter to pay for those cigarettes, Ms. Kyle's friend, Ms. Felder, was standing on the same side of the counter as the Appellant. *Id.* at 129. She therefore had the opportunity to observe him from a distance of one to two feet away, and she observed him for a couple of minutes. *Id.* When Appellant came back in the store, she testified that she recognized him because he was wearing the same clothes. *Id.* at 130. She was still standing at the counter in the same position as she was

before when Appellant pulled out the gun and asked for the money. *Id.* Ms. Felder had the opportunity to again observe Appellant at that point for approximately two or three minutes. *Id.* at 130, 132. She too later picked his picture out of the photographic array shown to her by the detective without hesitation. *Id.* at 149.

¶ 32 It is clear then that both Ms. Kyle and Ms. Felder had ample opportunity to observe Appellant in a brightly lit store at the time of the robbery. Furthermore both exhibited no hesitation in picking Appellant's picture from the photo array which they were shown by the detective.[3] Thus, there existed a sufficient independent basis for their subsequent in-court identifications. As such, trial counsel cannot be deemed ineffective for failing to request a lineup or to suppress these witnesses' identification of Appellant at the preliminary hearing. *Kenon, supra.*

¶ 33 Judgment of Sentence affirmed.

¶ 34 McEWEN, President Judge, concurs in the result.

---

**3.** Appellant does not argue that the photo array shown the two witnesses was in any way impermissibly suggestive.