J-S17013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVHATE TYREE JOHNSON | : | |
| | : | |
| Appellant | : | No. 1126 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000084-2021

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: JULY 6, 2023**

Travhate Tyree Johnson appeals from the judgment of sentence, imposed in the Court of Common Pleas of Erie County, after a jury convicted him of firearms not to be carried without a license[1] and the trial court convicted him of the summary offense of firearms discharge prohibited.[2]  After careful review, we affirm in part, vacate in part, and remand for resentencing.

This matter stems from events that occurred on the morning of December 19, 2020.  Tina Dennington, a second-floor resident of 547 East 26th Street, Erie, testified that, at approximately 10:00 a.m. on that day, she heard a gunshot, a sound that she recognized because "[i]t happens every day" in her neighborhood.  N.T. Trial, 5/17/22, at 26.  When Dennington

_____

[1] 18 Pa.C.S.A. § 6106(a)(2).

[2] Erie General Offenses Code § 725.05.

looked out her front window, she saw a black man wearing a red hoodie with a black gun in his hand. *See id.* at 27. There was no one else on the street. *See id.* at 41. The man was walking, and then running, towards Ash Street. *See id.* at 27. Dennington estimated that the man was in his early 20s and testified that she was able to see his face. *See id.*

Dennington called 911 to report the gunshot. As she spoke to the operator, she moved to the rear of her apartment, which overlooked West Ash Street, an alley running between and parallel to 26th and 27th Streets, and perpendicular to Ash Street. *See id.* at 28, 34. Dennington testified:

> [The 911 operator] was . . . trying to get my information and I was telling her, I said, I can see everything that he's doing. I see him take off the red hoodie and he had a gray sweatshirt underneath that and I see him wrap the gun up [in the red hoodie] and[—]my neighbors downstairs . . . used to have a pop-up camper and I see him put it underneath the camper.

*Id.* at 28, 37. Dennington then observed the man remove the grey sweatshirt, tuck what looked like a lanyard into a blue striped shirt, and head east toward Ash Street. *See id.* at 37-39, 50. After briefly losing sight of the man, Dennington observed him walking south on Ash Street toward 28th Street, "trying to be . . . nonchalant[.]" *Id.* at 41. At that point, Dennington saw the police pull up behind the man and she hung up with the 911 operator. *See id.*

Dennington then went out to her front porch to smoke a cigarette and repeated to the police what she had told the 911 operator. *See id.* at 43. She also informed the police that the man was "average height, thin, [and]

he had a beard" and "low" hair.  ***Id.*** (Dennington indicating with hand approximately one inch of hair).  The police then brought a cruiser, with Johnson inside, around to the parking lot in front of Dennington's house and she identified Johnson as the man she had seen.  ***See id.***  Dennington testified as follows:

Q:  Okay.  And what happens when they bring the police car around?

A:  They had him get out and they had me [identify] him.

Q:  Okay.  And how did you know that this was the same individual?

A:  Because he had on the striped shirt that I [saw] him take the other clothes—shirts off that he was in. . . . He had the same striped shirt on and, you know, I could see the beard and his hair.

Q:  Okay.  Was this individual with the police when you identified him?

A:  Yes.

Q:  Okay.  Had there been an individual with the police who wasn't the same person that you saw, would you have identified him?

A:  I don't understand.

Q:  Let me rephrase that.  Did you identify him because he was in the custody of the police?

A:  No, because I [saw] him take off the hoodie and the other shirt and I [saw] that he was in the striped shirt.

Q:  Okay.  Was it the same facial features you saw in the front of your home?

A:  Yes.

＊ ＊ ＊

Q:  Were you at all swayed or influenced by officers to identify [Johnson]?

A: No, not at all.

*Id.* at 44-45, 47. Dennington also identified Johnson in court.

Police recovered a loaded Rock Island Armory .45 caliber pistol wrapped in a red sweatshirt, as well as a grey shirt, under the camper. *See* N.T. Trial, 5/18/22, at 13-15, 18-19. An NCIC check revealed that Johnson did not have a license to carry a firearm. *Id.* at 19-2. The pistol was found to be in "fully functional" condition. *Id.* at 50. A presumptive test for nitrates was performed on Johnson's hands, which was positive. *Id.* at 80.

On May 18, 2022, Johnson was found guilty of the above-stated offenses. The trial court ordered a pre-sentence investigation report and, on May 26, 2022, sentenced Johnson to five years of probation for VUFA and 50 hours of community services, plus court costs, for the summary offense under the Erie ordinance. Johnson filed post-sentence motions, which the court denied. This timely appeal follows, in which Johnson raises the following issues for our review:

> 1. The trial court committed an abuse of discretion and/or error of law when it denied [Johnson's] motion to dismiss pursuant to [Pa.R.Crim.P.] 600.
>
> 2. The trial court committed an abuse of discretion and/or error of law when it denied [Johnson's] motion for a pre-trial lineup.
>
> 3. The trial court committed an abuse of discretion and/or error of law when it permitted officer testimony regarding the presence of [gun shot residue ("GSR")] on [Johnson] as expert testimony.
>
> 4. The Commonwealth failed to present sufficient evidence to convict [Johnson] beyond a reasonable doubt of firearms not to be carried without a license and firearms discharge prohibited.

Brief of Appellant, at 3.

Johnson first asserts that the trial court erred in denying his motion to dismiss pursuant to Rule 600. Our standard of review of a Rule 600 determination is whether the trial court abused its discretion. *Commonwealth v. Solano*, 906 A.2d 1180, 1186 (Pa. 2006). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." *Commonwealth v. Wright*, 961 A.2d 119, 142 (Pa. 2008) (citations omitted). "Our scope of review is limited to the record evidence from the speedy trial hearing and the findings of the [trial] court, reviewed in the light most favorable to the prevailing party"—here, the Commonwealth. *Solano*, 906 A.2d at 1186.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Bethea*, 185 A.3d 364, 370 (Pa. Super. 2018).

Rule 600 provides, in relevant part, as follows:

(A) Commencement of Trial; Time for Trial

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * *

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600.

To establish whether there has been a Rule 600 violation under paragraph (A), a court must determine whether the delay is caused solely by the Commonwealth when the Commonwealth has failed to exercise due diligence. **Id.**, comment, citing **Commonwealth v. Dixon**, 907 A.2d 468 (Pa. 2006) and **Commonwealth v. Matis**, 710 A.2d 12 (Pa. 1998). "[D]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." **Commonwealth v. Bradford**, 46 A.3d 693, 701–02 (Pa. 2012).

Here, the criminal complaint was filed on December 19, 2020. Accordingly, the mechanical run date was December 20, 2021.[3] The trial court found the following 100 days[4] to be excludable:

> 1. Omnibus pre-trial habeas corpus motion filed on January 15, 2021, denied on February 10, 2021 (26 days);
>
> 2. Motion to compel discovery filed on May 18, 2021, withdrawn on May 28, 2021 (10 days);
>
> 3. Motion to compel pre-trial lineup filed July 21, 2021, denied on August 31, 2021 (40 days);
>
> 4. Motion to compel discovery/exhibit filed on October 18, 2021, denied on October 29, 2021[5] (11 days); and
>
> 5. Motion to dismiss filed on February 22, 2022, denied on March 7, 2022 (13 days).

*See* Trial Court Opinion, 3/7/22, at 1-3, 6.

The trial court found that the Commonwealth acted with due diligence in opposing all of Johnson's pre-trial motions and, therefore, the time associated with litigating and deciding those motions was excludable. *See id.* at 5, citing *Commonwealth v. Hill*, 736 A.2d 578 (Pa. 1999). Accordingly, Johnson's adjusted run date for Rule 600 purposes was March 30, 2022. As

---

[3] The 365th day after the criminal complaint was filed fell on a Sunday. Accordingly, the mechanical run date was the following Monday, December 20, 2021. *See* 1 Pa.C.S.A. § 1908 (providing that calculation of time periods omits weekends and holidays when last day of period is weekend or holiday).

[4] The trial court erroneously calculated a total of 101 excludable days.

[5] This motion sought to compel the production of surveillance footage viewed by the Erie Police Department and any laboratory testing requested. The court denied the motion on the basis that the discovery requested either did not exist or no longer existed. *See* Trial Court Opinion, 3/7/22, at 2.

the time for commencing trial had not elapsed at the time Johnson filed his motion to dismiss, the court denied relief. Johnson was ultimately brought to trial on March 16, 2022, fourteen days before the adjusted run date.

Johnson points to a total of 62 days he asserts were erroneously deemed excludable by the trial court. However, his brief provides neither argument as to why those days were not excludable, nor citation to authority to support his assertion that the court erroneously calculated the excludable time. Rather, Johnson baldly states that "[t]he Appellant disagrees with the trial court's computation of excludable time attributable to the Appellant," Brief of Appellant, at 9, and cites boilerplate case law regarding the Commonwealth's general duty to act with due diligence in bringing a defendant to trial. **See** Brief of Appellant, at 9. Because Johnson has presented no argument specific to his claim, with citation to relevant authority, we are constrained to find his claim waived. **See Commonwealth v. Johnson**, 985 A.2d 915, 925 (Pa. 2009) (absence of specific arguments as to each claim constitutes cursory legal discussion which is wholly inadequate to preserve issue for appellate review); **Commonwealth v. Martz**, 232 A.3d 801, 811 (Pa. Super. 2020) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.").

Next, Johnson asserts that the trial court committed an abuse of discretion and/or error of law when it denied his motion for a pre-trial lineup. The grant or denial of a request for a lineup is within the sound discretion of the trial court, and such a decision will not be disturbed absent an abuse of

discretion. *See Commonwealth v. Sexton*, 400 A.2d 1289, 1292 (Pa. 1979).

Johnson argues that Dennington's identification was "highly suggestive," where

> police officers conducted a "show up" where [] Dennington stood on her porch and the police cruiser parked across the street and in the adjacent parking lot. Law enforcement brought [Johnson] halfway out of the police cruiser, *in handcuffs*, and partially blocked by the door of the vehicle.

Brief of Appellant, at 10 (emphasis in original; unnecessary capitalization omitted). Johnson argues, pursuant to *Commonwealth v. Sexton*, 400 A.2d 1289 (Pa. 1979), that "where . . . the issue of identification is legitimately at issue, a timely request for a pre-trial or pre-hearing identification procedure should be granted." Brief of Appellant, at 10, quoting *Sexton*, 400 A.2d at 1294.

In denying Johnson's motion, the trial court noted a "significant factual distinction"[6] from the facts of *Sexton* and relied on the "totality of the circumstances" analysis set forth in this Court's decision in *Commonwealth v. Edwards*, 762 A.2d 382 (Pa. Super. 2000). There, this Court observed that a defendant "does not have a constitutional right to a line-up and the suggestiveness of a courtroom identification is only one factor to be

---

[6] We note that the trial court did not author an opinion on this issue and, instead, relied upon its one-page order denying Johnson's motion, which contains no factual analysis. We remind the trial court of its duty to issue an opinion, pursuant to Rule 1925(a), that explains the specific nature of, and grounds for, its conclusions.

considered in determining the reliability of the identification evidence." *Id.* at 391. Rather,

> [i]n assessing whether the totality of the circumstances support an independent basis for identification of a defendant as [the] perpetrator of a crime[, the f]actors to be considered in evaluating the likelihood of misidentification in a particular instance are:
>
>> [] the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
>
> *Manson v. Brathwaite*, [432 U.S. 98, 114 (1977)]. *See also Neil v. Biggers*, 409 U.S. 188, 199[] (1972).

*Id.* The most important factor in the totality of the circumstances test is the opportunity of the witness to view the suspect at the time of the crime. *Id.*

Here, Dennington had ample opportunity to observe Johnson at the time of the incident, having first seen him from her front window and then again in the rear alley as he removed articles of clothing and stashed the firearm. Dennington was able to accurately describe Dennington's physical appearance to the 911 operator, and the items of clothing she described Johnson as having removed were found with the gun under the camper. *See* N.T. Trial, 5/18/22, at 13-16 (Patrolman Michael Brown testifying having recovered red hoodie, gray shirt, and gun from beneath camper). When apprehended by police, Johnson was wearing a striped shirt as Dennington had described to the 911 operator. *See id.* at 27 (Officer Joshua Cambra testifying Johnson wore

- 10 -

striped sweater when apprehended). When Johnson was presented to Dennington for identification, it took her "[a]pproximately 20 seconds" to positively identify him as the man she had seen with a gun. *Id.* at 73. In light of the foregoing, and under the totality of the circumstances, there was a sufficient independent basis for Dennington's identification of Johnson. *Edwards*, *supra*. As such, the trial court did not abuse its discretion in denying Johnson's request for a pre-trial lineup. *Sexton*, *supra*.

Johnson next asserts that the trial court committed an abuse of discretion and/or error of law when it permitted Officer Joshua Olszewski to testify as an expert regarding the presence of GSR on Johnson. Johnson argues that, "[n]otwithstanding the limitations placed on his testimony by the trial court, Officer Olszewski still testified to the fact that he performed a 'presumptive gunshot residue test' on [Johnson]" and also testified that "GSR commonly contains nitrates." Brief of Appellant, at 12. Johnson argues that "the prejudicial nature of [Officer Olszewski's] testimony far outweighed its probative value." *Id.* at 13. He is entitled to no relief.

Our standard of review in cases involving the admission of expert testimony is broad. "Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." *Commonwealth v. Watson*, 945 A.2d 174, 176 (Pa. Super. 2008) (citations omitted).

Pennsylvania Rule of Evidence 702 governs the admission of testimony by expert witnesses and provides as follows:

- 11 -

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

The trial court addressed Johnson's claim as follows:

Initially, the Court notes that it allowed Officer Olszewski [] to testify that there was a presumptive nitrates test, not a "gunshot residue test,"[7] performed on [Johnson's] hands.

The court found that Officer Olszewski had the requisite training and expertise to testify as to how the test was conducted, how the result was obtained, and what the result was. Thus, he was permitted to testify that the test was presumptive for the presence of nitrates, but he was not permitted to testify that the test was indicative of gunshot residue. Although the presence of nitrates could be indicative of gunshot residue, it could also indicate the presence of fertilizer or certain foods. Defense counsel was able to effectively cross-examine Officer Olszweski at trial about the limitations of the nitrates test, including what other kinds of substances could leave traces of nitrates on a person's hand that would return a positive result. Thus, the Court found that the probative value of the evidence outweighed any prejudicial impact to [Johnson], and it was not an abuse of discretion to admit the evidence.

_____

[7] To the extent that Johnson's complaint relates to references by the assistant district attorney to "gunshot residue tests" in questioning Officer Olszewski, his claim is waived for failure to object at trial. *See **Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) (failure to raise contemporaneous objection to evidence at trial waives claim on appeal).

Opinion and Order of Court, 9/26/22, at 2 (unnecessary capitalization omitted).

After our review of the record, we can discern no abuse of discretion on the part of the trial court in allowing Officer Olszewski to testify as to the results of the presumptive test for nitrates performed on Johnson's hands. As the trial court noted, defense counsel ably cross-examined Officer Olszewski regarding other potential sources for the nitrates and the possibility of contamination prior to the test. *See* N.T. Trial, 5/18/22, at 89-93. Accordingly, Johnson is entitled to no relief.

Finally, Johnson challenges the sufficiency of the evidence supporting his convictions for firearms not to be carried without a license and firearms discharge prohibited. Our standard of review for a sufficiency challenge is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for [the] fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of

witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Williams***, 255 A.3d 565, 578-79 (Pa. Super. 2021) (citation omitted).

Johnson was convicted of firearms not to be carried without a license, which is defined, in relevant part, as follows:

> (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who **carries a firearm concealed on or about his person**, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a)(2) (emphasis added). "[T]o establish a violation of section 6106, the Commonwealth must establish that a defendant acted 'intentionally, knowingly or recklessly' with respect to each element, including the concealment element." ***Commonwealth v. Scott***, 176 A.3d 283, 291 (Pa. Super. 2017). "The essence of the offense is the 'concealed carrying' of a weapon[.]" ***Commonwealth v. Walker***, 169, 280 A.2d 590, 591 (Pa. Super. 1971).

Here, Johnson argues that "[t]he fact that both witnesses[8] visualized the firearm fails the concealment element required for a violation of this subsection." Brief of Appellant, at 14. In support of his claim, Johnson relies

_____

[8] We note that Dennington was the only witness who testified to actually having seen Johnson carrying a gun. However, Officer Joshua McDonald testified that another witness, named "Scott," gave a statement that he had seen a black man with a gun running down 26th Street. **See** N.T. Trial, 5/17/22, at 93.

upon this Court's decision in **Commonwealth v. Williams**, 346 A.2d 308 (Pa. Super. 1975).[9]  There, a witness observed Williams firing a "long[-]barrelled, jet[-]black [handgun]" at a moving automobile.  **Id.** at 309.  After the car turned a corner, the witness observed Williams holding the gun at his side. The witness subsequently saw Williams "spin the gun and toss it from one hand to the other," after which he stuck the gun in his belt and walked away. **Id.**  The witness notified a police officer of what he had seen and pointed out Williams, who was then sitting in a Cadillac.  Williams was arrested, but no gun was found.  Williams was convicted of, *inter alia*, a violation of section 6106.  On appeal, this Court found the evidence insufficient to sustain his conviction, where "there [was] no evidence whatsoever as to any attempt by [Williams] to conceal any weapon[.]" **Id.** at 310.

> Here, the trial court address this issue as follows:

> The court finds that there was sufficient evidence of the element of concealment.  The evidence tended to show that [Johnson] had concealed the firearm when he was in possession of it—even if that concealment was prior to his being seen running with it in his hand.  The verdict was not based upon that very short period of time when he was seen running with the weapon.  There was circumstantial evidence that he had concealed the weapon prior to being seen and direct evidence that he had been hiding with the weapon.  The jury had a factual basis upon which to base [its] verdict.

Trial Court Opinion, 9/26/22, at 7-8.

---

[9] Johnson's brief references a case captioned "Commonwealth v. Williams," but fails to provide a citation.  Based upon Johnson's description of the facts of the case, we conclude that the case Johnson refers to is that discussed *infra*.

Upon close review of the record, we are constrained to conclude that there is no support for the trial court's statement that the Commonwealth presented circumstantial evidence that Johnson had concealed the weapon prior to being observed by Dennington. The court's conclusion in this regard is based on nothing more than rank speculation that, at some unknown point prior to being seen, Johnson must have concealed the weapon. The court's statement that there was evidence of concealment, "even if that concealment was prior to his being seen" is, on its face, absurd, as the court has no way of knowing what Johnson did if no one testified to having seen him do it.[10]

Moreover, the court's allusion to "direct evidence that [Johnson] had been hiding with the weapon" is also unsupported by the record, which actually shows that Johnson carried the weapon openly until he wrapped it in a hoodie and stashed it. The statute requires proof that Johnson **carried** a firearm concealed on or about his person. To "carry" is defined as "to move while supporting" or to "transport." https://www.merriam-webster.com/dictionary/carry (last visited June 1, 2023). Here, the Commonwealth presented no evidence that Johnson concealed the weapon on or about his person while carrying it. Rather, Dennington testified that, when she observed Johnson in motion, he was openly holding the gun. Dennington only observed Johnson conceal the weapon when he hid it under the camper:

---

[10] Indeed, the statement amounts to a tacit admission that there was, in fact, no evidence of concealment.

Q: Okay. And you see this individual at the camper. What is the individual wearing when you first see them at the camper?

A: A red hoodie.

Q: Okay. And what do you see this individual do next?

A: Take off the red hoodie.

Q: And what is underneath the red hoodie?

A: A gray sweatshirt.

Q: Okay. What do you see happen next in regards to the sweatshirts or the individual?

A: I see him wrap the gun.

Q: What did he wrap the gun in?

A: Um, the red hoodie.

Q: Okay. And what did he do with the gun now wrapped in the red hoodie?

A: Put it underneath the pop-up camper.

Q: Okay. When the individual put the gun wrapped . . . in a hoodie underneath the camper, were you still able to see the gun?

A: No, not after he put it under the camper.

N.T. Trial, 5/17/22, at 36-37.

Dennington's testimony reveals that Johnson's weapon was visible right up to the point where he wrapped it in his hoodie and placed it under the camper. At that point, the gun was no longer "on or about his person" as required by the statute. *See id.* at 37 (Dennington testifying she observed Johnson wrap gun in hoodie and secrete it under camper). In sum, the Commonwealth presented no evidence that the gun was concealed while Johnson carried the weapon on or about his person. Accordingly, we are constrained to vacate Johnson's conviction under section 6106.

Johnson was also convicted of violating Erie Codified Ordinance § 725.05, firearms discharge prohibited, which provides that "[n]o person shall discharge any firearm or air rifle from or across any street or public land or any public place, except on a properly constructed target range." City of Erie Codified Ordinance § 725.05(b). The ordinance defines a firearm as "[a]ny pistol, revolver, shotgun[,] or rifle." *Id.* at § 725.05(a)(1).

Johnson's entire argument regarding this claim is that, "at trial, the Commonwealth failed to present any evidence or testimony that supported the allegation that [Johnson] was observed firing shots or discharging a firearm." Brief of Appellant, at 14. Johnson fails to develop any argument, with citation to the record or pertinent authority, as required by Pa.R.A.P. 2119(a). Accordingly, we conclude that Johnson has waived his challenge to the sufficiency of the evidence supporting his conviction under section 725.05(b) of the City of Erie Codified Ordinances.[11] *See Commonwealth v.*

---

[11] Even if he had not waived this claim, Johnson would be entitled to no relief. As noted above, the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *See Williams*, *supra*. Here, Dennington testified that she heard a gunshot and immediately looked out her window to see Johnson walking on a public street with a gun in his hand. *See* N.T. Trial, 5/17/22, at 26-27. She subsequently observed him hide the gun under a camper in the alley behind her residence. *See id.* at 37. From this testimony, the trial court, as fact-finder, could reasonably have inferred that it was Johnson's gun from which the shot was fired and that the act of concealing the gun under the camper evidenced consciousness of guilt. Finally, Officer Olszewski testified that a presumptive test of Johnson's hands for nitrates—commonly found in gunshot residue—was positive.

***Clayton***, 816 A.2d 217 (Pa. 2002) ("[I]t is a well[-]settled principle of appellate jurisprudence that undeveloped claims are waived and unreviewable on appeal."); ***see also Johnson***, ***supra***; ***Martz***, ***supra***.

Judgment of sentence and conviction for firearms not to be carried without a license vacated.  Judgment of sentence and conviction for firearms discharge prohibited affirmed.  Case remanded for resentencing.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2023