J-S30036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON GARLAND | : | |
| | : | |
| Appellant | : | No. 197 EDA 2022 |

Appeal from the PCRA Order Entered January 5, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002646-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED FEBRUARY 15, 2024**

Brandon Garland ("Garland") appeals from the order dismissing his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court previously set forth the following factual and procedural history:

> On November 14, 2015, a group of men were standing on the corner of D Street and Indiana Avenue in the city and county of Philadelphia, Pennsylvania.  Complainant Luis Rivera [("Rivera")] observed . . . Garland jump out of his car with a black gun with a long clip.  [Garland] approached the group of individuals on the block, stopping only twenty feet before he started to shoot into the crowd.  Rivera was hit once in his right ankle as he was running away.  The second complainant, Kevin Murphy [("Murphy")], was shot four times, twice in the foot, once in the leg and one to the thigh.  [Garland] fled the scene in his car.  A police investigation revealed that [Garland] had been hired by a drug gang who were rivals of the group standing on the

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

corner of D Street and Indiana Avenue. Information describing [Garland] was released over police radio and [Garland] was stopped a little over an hour later. Three other people were in the car with [Garland]. Joshua Jangdhari [("Jangdhari")], who had witnessed the shooting, was brought to the location, and identified [Garland] as the shooter. About five hours after the shooting, . . . Rivera confidently identified [Garland] from a photo array he was shown[, though he falsely stated he had never seen Garland before; he later corrected his false statement and told officers he had seen Garland before the shooting]. Testing of [Garland's] clothing revealed the presence of gunshot residue.

At [Garland's] preliminary hearing [i]n January [] 2016, [the municipal court] granted a line up identification for . . . Rivera. However, it does not appear a line up occurred. [I]n April [] 2017, the jury trial . . . began. . . . The Commonwealth presented complainants Rivera and Murphy as witnesses, along with eyewitness Jangdhari. All three witnesses acknowledged their involvement in their use and sale of drugs[,] and both Rivera and Jangdhari identified [Garland] as the shooter. On May 1, 2017, the jury convicted [Garland] of [c]arrying a [f]irearm without a [l]icense, 18 Pa.C.S.[A.] § 6106, and [c]arrying a [f]irearm on a [p]ublic [s]treet, 18 Pa.C.S.[A.] § 6108. Following the jury's conviction, [Garland] pleaded guilty to [p]ossession of a [f]irearm [p]rohibited, 18 Pa.C.S.[A.] § 6105. [Specifically, Garland acknowledged the jury had found beyond a reasonable doubt he possessed a firearm, and he admitted the additional element of section 6105, namely, that he was ineligible to possess a firearm.] The jury acquitted [Garland] of attempted murder, aggravated assault, and possession of an instrument of a crime [("PIC")].

[I]n August [] 2017, [Garland] was sentenced to five [] to ten [] years in prison for persons prohibited to possess firearms, as well as two and one-half [] to five-year [] terms of imprisonment on the other firearms offenses to run concurrently to each other[,] but consecutively to the five [] to ten [] year[-]sentence. At the same time, [Garland] was sentenced for a violation of probation in a 2015 case[,] which resulted in an aggregate sentence of twenty-two and one half [] to forty-five [] years [of] imprisonment. [I]n August [] 2017, trial counsel filed a timely post-sentence motion to modify or reconsider sentence, [but did not raise a challenge to verdict based on the weight of the evidence. The trial court denied the motion later that month.] [Garland] filed an appeal in the Pennsylvania Superior Court,

challenging his sentence as unduly harsh. [I]n June [] 2018, the Superior Court affirmed his judgment of sentence. [I]n December [] 2018, the Pennsylvania Supreme Court denied [Garland's] petition for allowance of appeal.

On October 23, 2019, [Garland] filed a [timely] *pro se* PCRA petition. [Garland] moved to proceed *pro se* and requested a [] hearing [to determine whether he could represent himself pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998)]. . . ..

[Ultimately, following appointment of first PCRA counsel and a motion to dismiss that counsel filed by Garland, i]n July [] 2020, [new PCRA counsel] was appointed to represent [Garland]. On July 27, 2020, [Garland] filed another motion to proceed without counsel. [I]n October [] 2020, a ***Grazier*** hearing was held virtually, and [Garland] elected to allow [appointed counsel] to raise his PCRA claims. [I]n February [] 2021, [PCRA] counsel filed an amended PCRA petition.

[The Commonwealth moved to dismiss the petition in July 2021, and o]n November 19, 2021, th[e PCRA c]ourt filed a [Pa.R.Crim.P. 907 Notice of Intent] to Dismiss [the PCRA Petition W]ithout [an] Evidentiary Hearing. On January 5, 2022, th[e PCRA c]ourt dismissed [Garland's] PCRA petition. On January 6, 2022, [Garland timely] filed a Notice of Appeal.

PCRA Court Opinion, 7/13/22, at 1-4 (headings and footnotes omitted). Both Garland and the PCRA court complied with Pa.R.A.P. 1925.

Garland raises the following issues for our review:

I.   [Whether] trial counsel was ineffective for failing to file a post sentence motion challenging the weight of the evidence convicting [Garland] of the firearms offenses charged as violations of 18 [Pa.C.S.A. §] 6106 and 18 [Pa.C.S.A. §] 6108[?]

II.  [Whether] trial counsel was ineffective for failing to request a line-up to test the reliability of the identification testimony of [] Rivera[?]

III. [Whether] trial counsel was ineffective for inducing [Garland] to enter an unknowing, involuntary and unintelligent guilty plea to the charge of possession of a firearm by a prohibited person in violation of 18 [Pa.C.S.A. §] 6105[?]

IV. [Whether the PCRA court committed an] abuse of discretion for failure to hold an evidentiary hearing on [the] PCRA petition[?]

Garland's Brief at 2.

Our standard of review of an order dismissing a PCRA petition is well-settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). Further, "there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa. Super. 2008) (internal citation, quotations, and brackets omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted).

- 4 -

Garland's first three issues concern allegations of ineffective assistance of counsel. In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in section 9543(a)(2), which includes the ineffective assistance of counsel. **See** 42 Pa.C.S.A § 9543(a)(2)(ii); **see also Commonwealth v. Benner**, 147 A.3d 915, 919–20 (Pa. Super. 2016). To prevail on an ineffectiveness claim, the petitioner has the burden to prove: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." **Benner**, 147 A.3d at 920 (internal citations and quotations omitted). The failure to satisfy any of these prongs is fatal to a petitioner's claim. **See id**. Additionally, counsel is presumed effective. **See id**.

Regarding "arguable merit," this Court has provided that, "[t]he first inquiry in an ineffectiveness claim is always whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." **Commonwealth v. Lott**, 581 A.2d 612, 614 (Pa. Super. 1990) (internal citation and quotations omitted). For the "reasonable basis" prong, the petitioner must show that counsel "had no reasonable basis designed to

effectuate his client's interests." *Id*. Lastly, to establish prejudice, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017) (internal citation omitted).

In his first issue, Garland argues the trial court erred in concluding trial counsel was not ineffective for failing to file a post-sentence motion challenging the weight of the evidence for the firearms convictions. A weight claim must be preserved in a post-sentence motion. *See Commonwealth v. Smith*, 181 A.3d 1168, 1186 (Pa. Super. 2018). Unless an attorney's omission completely forecloses appellate review, a petitioner must satisfy the three-prong ineffectiveness test, including prejudice. *See id*. Thus, "in order to obtain relief on his ineffectiveness claim, [an a]ppellant must demonstrate that the verdict was against the weight of the evidence such that counsel may be deemed ineffective in failing to file the post-sentence motion." *Id*. (internal citation omitted).

"A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but claims that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa. Super. 2003) (internal citation and quotations omitted). Disposition

of a post-sentence motion raising a weight claim is within the trial court's discretion; as this Court has explained:

> [O]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice. A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

**Smith**, 181 A.3d at 1187 (internal citation and indentation omitted).

Additionally:

> A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. The decision whether to grant a new trial on this basis rests within the discretion of the trial court. A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative so that right may be given another opportunity to prevail. The role of an appellate court in reviewing the weight of the evidence is very limited. The purpose of that review is to determine whether the trial court abused its discretion and not to substitute the reviewing Court's judgment for that of the trial court. Accordingly, where the evidence is conflicting, the credibility of the witnesses is solely for the jury, and if its finding is supported by the record, the trial court's denial of a motion for new trial will not be disturbed.

**Commonwealth v. Holmes**, 663 A.2d 771, 774 (Pa. Super. 1995) (internal citations omitted).

Garland, in his first issue, asserts the PCRA court erred in concluding trial counsel was not ineffective for failing to file a post-sentence motion

arguing his firearms convictions were against the weight of the evidence. *See* Garland's Brief at 10. Garland points to his acquittals for attempted murder, aggravated assault, and possession of an instrument of crime as evidence that he was not the shooter. Garland additionally argues that, because there were conflicts in the testimony about whether he was the driver or passenger of the fleeing sedan, the evidence was "so inconsistent and contradictory that trial counsel was ineffective for failing to mount a challenge to the weight of the evidence." *Id*. at 10-11.

The PCRA court considered this issue and determined it merited no relief:

> . . . [W]itnesses testified to seeing [Garland] holding a gun at the time and location of the shooting.
>
> Next[, Garland] states that there may have been a "plausible misidentification" between him, and the other person found in the car with him, Omar Donaldson. According to [Garland], both he and Donaldson have the same alias "Black," and both were wearing similar outfits (dark hoodie and jeans). However, as the Commonwealth notes, eyewitness Jangdhari was familiar with Donaldson prior to the incident and would be able to recognize the differences between [Garland] and Donaldson.
>
> [Garland] also argues that the witnesses who testified at trial admitted to being involved in drug sales or using drugs at the time of the shooting and that this may have "substantially impacted their recollection, understanding, and capacity to be honest." However, credibility determinations are made by factfinders. To reiterate, it is within the province of the factfinder to determine the weight to be accorded to each witness'[s] testimony and to believe all, part, or none of the evidence. Here, the jury Acting as factfinder heard [the] witness[es]' testimony[,] including their drug activities[,] and still found them to be credible.

. . . Also, the expert witness'[s] testimony that [gunshot residue on Garland's clothes showed he] was in close contact with a fired gun is consistent with other witness[] testimony that they observed [Garland] holding a gun at the shooting scene.

None of [Garland's] alleged discrepancies are so contradictory as to shock one's sense of justice. In all material respects, three witnesses corroborated each other's testimony. Two of the witnesses were able to identify [Garland] as the shooter and describe the firearm itself. The jury was able to hear these individual accounts along with the forensic evidence concerning gunshot residue. Given the substantial evidence establishing [Garland's] active participation in the shooting, the jury's decision to credit their testimony does not shock the conscience. The [c]ourt would not have granted a post-sentence motion on [Garland's] weight claim; thus[, Garland] was not prejudiced by trial counsel's failure to file a such a motion.

PCRA Court Opinion, 7/13/22, at 8-9 (some internal citations and quotations omitted).

Following our review, we conclude the PCRA court's findings are supported by the record and its legal conclusions error-free. Initially, we reject Garland's argument that his acquittal for aggravated assault, attempted murder, and PIC show that the jury disbelieved he possessed the gun. An acquittal cannot be interpreted as a specific finding in relation to some of the evidence. *See Commonwealth v. Barkman*, 295 A.3d 721, 738 (Pa. Super. 2023). Instead, "[i]nconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment." *Id*. (internal citations and quotations

omitted). Further, two eyewitnesses identified Garland as the shooter (*i.e.*, as the possessor of the gun), both prior to, and at, trial. **See** N.T., 4/25/17, at 136-37, 148 (identification of Garland by Jangdhari); N.T., 4/26/17, at 54-57, 73-74, 104-06 (identification of Garland by Rivera). Gunshot residue on Garland's clothes corroborated this testimony. **See** N.T., 4/27/17, at 52-53, 60-66. It was the jury's province to make credibility determinations and weigh the evidence. **See Commonwealth v. James**, 297 A.3d 755, 768 (Pa. Super. 2023). Conflicts in the evidence were also for the jury to resolve. **See Holmes**, 663 A.2d at 774. Here, Garland has failed to show prejudice, *i.e.*, that the verdict was against the weight of the evidence, such that, had trial counsel filed a post-sentence motion challenging the weight of his convictions, the trial court would have granted it, or erred in denying it. **See Smith**, 181 A.3d at 1186. Thus, Garland's first issue merits no relief.

Garland argues in his second issue that the PCRA court erred in concluding trial counsel was not ineffective for declining to file a motion to suppress the identification by Rivera and a motion for a lineup for Rivera. This Court has stated the relevant law as follows:

> To begin with, an accused does not have a constitutional right to a line-up and the suggestiveness of a courtroom identification is only one factor to be considered in determining the reliability of the identification evidence. Moreover, this jurisdiction has declined to accept a *per se* rule that a pre-trial, pre-hearing line up is mandatory in all cases. *A fortiori,* counsel's failure to request a lineup or failure to object to identification testimony is not *per se* ineffective assistance.

*Commonwealth v. Kenon*, 482 A.2d 611, 613 (Pa. Super. 1984) (internal citation and quotations omitted). Where the totality of the circumstances shows there is a basis for the in-court identification, independent of any suggestiveness, trial counsel cannot be ineffective for failing to request a lineup or to make a motion to suppress the identification. *See Commonwealth v. Edwards*, 762 A.2d 382, 391 (Pa. Super. 2000).

Garland argues that trial counsel was ineffective for failing to file a motion to suppress the identification testimony of Rivera and ask for a lineup. *See* Garland's Brief at 12. Garland notes that the municipal court at the preliminary hearing granted a motion for lineup, however, the lineup never took place. *See id*. Additionally, Garland describes Rivera's testimony as "inconsistent." *Id*. Garland argues that, since the jury acquitted him of attempted murder, aggravated assault, and possession of an instrument of a crime, it must have concluded Garland was not the shooter. *See id*. Further, there was inconsistent testimony in that two people identified Garland as the shooter; while another eyewitness testified that the shooter jumped into the "passenger compartment" of a sedan, yet an officer testified that he observed Garland shortly after the shooting to be the driver, not the passenger. *See id*. at 12-13.

The PCRA court considered this claim and concluded it merited no relief:

. . . [Garland] has failed to establish that he was unduly prejudiced by the lack of the line-up. This claim fails [because] it cannot be claimed that the result in the proceedings would have been any different. Both witnesses, Rivera and Jangdhari, made

- 11 -

positive in-court identifications of [Garland]. Jangdhari made an in-person identification on the day of the shooting when he was shown [Garland] and Donaldson side by side, [and he identified Garland] as the shooter. In regard to Rivera's identification, the photo identification was relatively soon after, five hours, and was corroborated by not only Jangdhari but by the fact that gunshot residue was discovered o[n Garland's] clothing. The failure to renew the request for a line-up following the grand jury indictment did not prejudice [Garland].

*See* PCRA Court Opinion, 7/13/22, at 10-11.

Following our review, we discern no abuse of discretion or error of law by the PCRA court. Rivera identified Garland at trial as the shooter. *See* N.T., 4/26/17, at 55-57. Rivera testified that he previously identified Garland in a photo lineup as the shooter. *See id*. at 73-74; 104-06.[2] Apart from Rivera's one inconsistent statement to police, initially, that he had never seen Garland before, Garland advances no argument as to why a lineup, had it occurred, would have changed the outcome of his case.[3] Rivera's prior inconsistent

_____

[2] Rivera acknowledged at trial a prior inconsistent statement, *i.e.*, that he had previously told a detective on the day of the shooting that he had never seen Garland before the shooting. *See* N.T., 4/26/17, at 87-88. When confronted with his inconsistency, he explained he had been trying to "avoid getting locked up," and had wanted to "get out of the [d]istrict as fast as I could." *Id*. at 88. Subsequent to his inconsistent statement, but prior to trial, Rivera gave a written statement stating that Garland was the shooter and that he had seen him three or four times before. *See id*. at 103; *accord* N.T., 4/26/17, Ex. C-68, at 2.

[3] Garland does not challenge Rivera's ability to accurately perceive him during the incident, nor does he suggest Rivera's identification was under unduly suggestive circumstances. *Compare* Garland's Brief at 12-13 *with Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa. Super. 2011) ("Identification evidence will not be suppressed unless the facts demonstrate
*(Footnote Continued Next Page)*

statement, which did not affect his identification of Garland as the shooter, was explored during cross-examination, and the jury was free to credit some, all, or none of Rivera's testimony. *See Commonwealth v. Stiles*, 143 A.3d 968, 981 (Pa. Super. 2016) ("A jury decision to credit certain evidence and reject other testimony is appropriate . . .."); *Commonwealth v. Kinney*, 157 A.3d 968, 971-72 (Pa. Super. 2017) (inconsistencies in witness testimony pertains to the witness's credibility, and, as such, goes to the weight of the evidence rather than sufficiency); *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (noting that mere conflict in the testimony does not render the evidence insufficient because it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence).

In his third issue, Garland argues the PCRA court erred in rejecting his assertion that trial counsel's ineffectiveness caused him to enter a guilty plea that was not knowing, intelligent, and voluntary. This Court has stated the law as follows:

> [A]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the

---

that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification") (internal citation and quotation omitted). We additionally reiterate that the evidence against Garland included, *inter alia*, an eyewitness identification of Garland by Jangdhari, *see* N.T., 4/25/17, at 136-37, and gunshot residue on Garland's clothing. *See* N.T., 4/27/17, at 60-66.

voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.

*Commonwealth v. Wah*, 42 A.3d 335, 338–39 (Pa. Super. 2012) (internal citations and quotations omitted). Further, "[a] defendant is bound by the statements which he makes during his plea colloquy. As such, a defendant may not assert grounds for withdrawing the plea that contradict statements made when he entered the plea." *Commonwealth v. Orlando*, 156 A.3d 1274, 1281 (Pa. Super. 2017) (internal citations and quotations omitted). The law does not require that a defendant be pleased with the outcome of his decision to enter a plea of guilty; rather, all that is required is that his decision to plead guilty be knowingly, voluntarily and intelligently made. *See Commonwealth v. Anderson*, 995 A.2d 1184, 1192 (Pa. Super. 2010). Once a defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. *See Commonwealth v. Willis*, 68 A.3d 997, 1002 (Pa. Super. 2013).

Garland argues that his plea to violating section 6105, *i.e.*, person not to possess a firearm, was unknowing because he did not understand at the time that it could impact his appeal of the convictions for violating sections 6106 and 6108 (carrying a firearm without a license and carrying a firearm on a public street, respectively), since he was conceding possession of the firearm. *See* Garland's Brief at 14. Garland suggests counsel instead should

have advised him to request a non-jury trial to preserve his right to challenge possession for all of the counts. *See id*.

The PCRA court considered Garland's issue and concluded it merited no relief:

> [Garland] has failed to meet his burden of overcoming the presumption that the plea was entered into unknowingly. Further, every element of this crime was already determined by the jury, with the exception of the ineligibility to possess a firearm. As is standard in such cases, [Garland] agreed to be plead guilty to this if found guilty of the remaining firearms charges in order to prevent the jury from discovering his prior criminal history. Thus, [Garland] has failed to prove he was unlawfully induced to enter a guilty plea[.]

*See* PCRA Court Opinion, 7/13/22, at 11-12.

Following our review, we discern no abuse of discretion or error of law by the PCRA court. The record reveals that, following the jury's verdict, Garland pleaded guilty to persons not to possess. *See*, *e.g.*, N.T., 5/1/17, at 9-10. Garland filled out a written plea colloquy with trial counsel. *See id*. at 10. In the written colloquy, Garland acknowledged, *inter alia*, the effect of his guilty plea on his appellate rights. *See* Colloquy, 5/1/17, at 3. Furthermore, during the oral colloquy, Garland informed the trial court that he knew he was giving up a right to trial for this count. *See id*. at 11. Crucially, Garland did not admit to possession as part of his plea to section 6105; rather, he acknowledged the jury had already found beyond a reasonable doubt that he possessed a firearm, by virtue of its convictions for sections 6106 and 6108,

and that, given this finding of fact, he was admitting the additional fact of his ineligibility to possess a firearm for purposes of his plea to section 6105:

> Trial Court: You heard the jury in your case found you guilty of [s]ection 6106 and [s]ection 6108 . . .. ***The additional element in [s]ection 6105 is that you're ineligible. You could have asked the jury to decide that question***. Do you understand that?
>
> [Garland]: Yes, sir.

*Id*. at 11-12 (emphasis added). *Cf*. ***Commonwealth v. Calhoun***, 52 A.3d 281, 285 (Pa. Super. 2012) (noting that the same facts may support multiple convictions). Given that the record belies Garland's argument that he pleaded guilty, unknowingly, to possession of a firearm, but rather establishes that the jury found beyond a reasonable doubt that he possessed a firearm, and that he merely admitted to additionally being ineligible to possess the firearm, Garland is due no relief.

In his fourth and final issue, Garland argues the PCRA court committed an error of law by dismissing his petition without an evidentiary hearing. Garland maintains the PCRA court needed to hold an evidentiary hearing to "determine the reasons for trial counsel's failures." ***See*** Garland's Brief at 17. However, as noted above, each of Garland's ineffectiveness claims fails because he has failed to plead prejudice. Failure to satisfy any one of the ineffectiveness prongs is fatal to a claim. ***See Benner***, 147 A.3d at 920. Because Garland failed to show a genuine issue of material fact in controversy, an evidentiary hearing was unnecessary, and, accordingly, the PCRA court did

not err in declining to hold an evidentiary hearing. ***See***, ***e.g.***, ***Wah***, 42 A.3d at 338 (providing that a PCRA court need not hold an evidentiary hearing, but, rather, may dismiss without an evidentiary hearing where there are no genuine issues of material fact in controversy). Accordingly, Garland's last issue warrants no relief.

Order affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/15/2024