J-A13044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| LANCE ROGERS | : | |
| Appellant | : | No. 1210 WDA 2023 |

Appeal from the PCRA Order Entered September 6, 2023
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0002599-2018

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: June 11, 2024**

Appellant, Lance Rogers, appeals from the post-conviction court's September 6, 2023 order denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant argues that the court erred by dismissing his petition, where his plea counsel acted ineffectively by failing to adequately advise him regarding two, negotiated plea offers made by the Commonwealth, resulting in Appellant's rejecting those offers to his detriment.  Additionally, Appellant's counsel, Corrie Woods, Esq., has filed a ***Turner/Finley***[1] 'no-merit' brief and a petition to withdraw from representing Appellant.  After careful review, we grant counsel's petition to withdraw and affirm the order denying Appellant's PCRA petition.

---

[1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

The PCRA court summarized the pertinent facts and procedural history of Appellant's case, which we adopt herein. *See* PCRA Court Opinion (PCO), 9/6/23, at 1-5. We need only briefly note that, in October of 2018, Appellant was arrested and charged with numerous drug and firearm offenses. Ultimately, Appellant filed and litigated an unsuccessful, pretrial motion to suppress. He was then offered two, separate plea deals – first, for "a negotiated term of 10[½] to 22 years['] imprisonment," and, second, for "a negotiated term of 13 to [2]6 years['] imprisonment." No-Merit Brief at 6. Appellant rejected both offers and proceeded to a jury trial in October of 2019. At the close thereof, he was convicted of ten counts of possession of a firearm by a person prohibited (18 Pa.C.S. § 6105(a)(1)), and single counts of possession with intent to deliver a controlled substance (35 P.S. § 780-113(a)(30)), possession of a controlled substance (35 P.S. § 780-113(a)(16)), and possession of drug paraphernalia (35 P.S. § 780-113(a)(32)). On January 31, 2020, the court sentenced Appellant to an aggregate term of 20 to 40 years' incarceration. This Court affirmed his judgment of sentence on direct appeal, and he did not file a petition for permission to appeal with our Supreme Court. *See Commonwealth v. Rogers*, 260 A.3d 175 (Pa. Super. 2021) (unpublished memorandum).

Instead, Appellant timely filed a PCRA petition. Attorney Woods was appointed to represent Appellant, and filed an amended petition on Appellant's behalf. Therein, Appellant alleged that his trial counsel "provided ineffective counsel due to his failure to[] adequately communicate to [Appellant] the

strength of the Commonwealth's case, the risks and potential outcomes of trial, and … the risks and potential outcomes that trial would give rise to at sentencing." PCO at 8 (citation to the record and internal quotation marks omitted). Appellant "further aver[red] that had [trial counsel] adequately apprised [him] of the aforementioned information, [Appellant] would have foregone proceeding to trial and[,] instead, would have opted to accept the Commonwealth's plea offer." *Id.* (citation to the record omitted). The PCRA court conducted an evidentiary hearing on June 22, 2023. Thereafter, the court issued an order and opinion on September 6, 2023, denying Appellant's petition.

Appellant filed a timely notice of appeal. In response to the PCRA court's order for Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, Attorney Woods filed a Rule 1925(c)(4) statement of his intent to file a petition to withdraw. On October 19, 2023, the PCRA court issued a statement indicating that it was relying on its September 6, 2023 opinion to support its decision to deny Appellant's petition.

On December 4, 2023, Attorney Woods filed an application to withdraw as counsel and a no-merit letter. However, counsel's no-merit letter did not satisfy the briefing requirements of this Court. Accordingly, on December 15, 2023, this Court issued an order denying the application to withdraw without prejudice for Attorney Woods to file a *Turner/Finley* brief that complied with the necessary procedural requirements or an advocate's brief on or before January 16, 2024. On January 16, 2024, counsel filed a *Turner/Finley* brief

- 3 -

and a new application to withdraw. Appellant filed a *pro se* response on May 13, 2024, which we will address *infra*.

We must begin by determining if Attorney Woods has satisfied the requirements for withdrawal.

> Counsel petitioning to withdraw from PCRA representation must proceed … under [**Turner**, **supra**, and **Finley**, **supra**, and] … must review the case zealously. **Turner/Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> ***
>
> [W]here counsel submits a petition and no-merit letter that ... satisfy the technical demands of **Turner/Finley**, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Doty**, 48 A.3d 451, 454 (Pa. Super. 2012) (citation omitted).

Here, Attorney Woods has filed a petition to withdraw and a no-merit brief. Therein, counsel sets forth the ineffectiveness claim that Appellant wishes to raise on appeal, and he indicates the nature and extent of his review of that claim. Attorney Woods also explains why Appellant's issue is meritless. Attached to his petition to withdraw, Attorney Woods included a letter

- 4 -

addressed to Appellant informing him that counsel is withdrawing, stating that counsel has enclosed his no-merit brief, and advising Appellant that he has the right to retain private counsel or proceed *pro se*.  Accordingly, Attorney Woods has satisfied the first four requirements for withdrawal under ***Turner/Finley***.  Next, we will conduct our own independent assessment of the record to determine if the issue presented in Appellant's petition is meritless.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error.  ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007).  Where, as here, a petitioner claims that he or she received ineffective assistance of counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S. § 9543(a)(2)(ii).  "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [***Commonwealth v.***] ***Colavita***, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing ***Strickland*** [***v. Washington***, 466 U.S. 668 … (1984)]).  In Pennsylvania, we have refined the ***Strickland*** performance and prejudice test into a three-part inquiry.  ***See*** [***Commonwealth v.***] ***Pierce***, [527 A.2d 973 (Pa. 1987)].  Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result.  ***Commonwealth v. Ali***, …

- 5 -

10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali**, **supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, … 10 A.3d at 291 (quoting **Commonwealth v. Collins**, … 957 A.2d 237, 244 ([Pa.] 2008) (citing **Strickland**, 466 U.S. at 694….)).

**Commonwealth v. Spotz**, 84 A.3d 294, 311-12 (Pa. 2014).

Presently, Appellant contends that his trial counsel was ineffective for not adequately advising him regarding two plea offers by the Commonwealth. Specifically, Appellant claims that counsel

failed to adequately communicate the strength of the Commonwealth's case, and to explain that proceeding to trial would lead to … significantly greater sentencing exposure, including in the form of numerous consecutive sentences. Appellant further maintained that, had [counsel] properly advised him in that regard, he would have accepted the Commonwealth's offers.

No-Merit Brief at 6. In his *pro se* response to counsel's **Turner/Finley** no-merit brief, Appellant adds that this Court "should credit Appellant's [PCRA hearing] testimony that [plea counsel] failed to advise and actually misadvised him[,] giving rise to an involuntary plea[,] and grant a new trial." *Pro Se*

Response, 5/13/24, at 3. He further contends that the PCRA court should not have believed his plea counsel's testimony at the PCRA hearing. ***See id.***

Initially, it is well-settled that "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court…." ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015) (citation and quotation marks omitted). Here, the record supports the PCRA court's determination that Appellant's plea counsel credibly testified at the PCRA hearing that he rendered effective representation to Appellant during the discovery and plea negotiation process. ***See*** PCO at 10-23 (discussing the testimony offered by Appellant and plea counsel at the evidentiary hearing, and concluding, throughout that discussion, that plea counsel's testimony was credible). In assessing Appellant's arguments to the contrary, we have reviewed Attorney Woods' no-merit brief, Appellant's *pro se* response, the Commonwealth's brief, the certified record, and the applicable law. We have also assessed the detailed decision of the Honorable Valarie Costanzo of the Court of Common Pleas of Washington County that was filed on September 6, 2023. We conclude that Judge Costanzo's well-reasoned opinion thoroughly and correctly explains why Appellant's ineffectiveness claim lacks merit. Accordingly, we adopt Judge Costanzo's opinion as our own in affirming the order denying Appellant's PCRA petition. Given that Appellant has no arguably meritorious issue to raise herein, we grant Attorney Woods' petition to withdraw.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/11/2024

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
<u>CRIMINAL DIVISION</u>

COMMONWEALTH OF PENNSYLVANIA,  )
                                              )
     v.                                  )     No.    2599-2018
                                                )
LANCE ROGERS,                  )
                                            )
      Defendant.           )
                                            )

## <u>ORDER</u>

AND NOW, this 6th day of September, 2023, after thorough review and due consideration

of Petitioner's *pro se* Motion for Post Conviction Collateral Relief filed on February 7, 2022, the

Amended Petition for Relief Pursuant to the Post Conviction Relief Act filed by Petitioner on

January 4, 2023, the Commonwealth's Answer to Defendant's Post-Conviction Relief Act Petition

filed by the Commonwealth on March 8, 2023, along with the testimony presented at evidentiary

hearing held on June 22, 2023, and after review of the respective briefs submitted by both parties,

as well as the official record and applicable case law, it is hereby ORDERED, ADJUDGED, and

DECREED that Petitioner's Amended Petition for Relief Pursuant to the Post Conviction Relief

Act is DENIED.

## <u>PROCEDURAL HISTORY</u>

On October 26, 2018, Detective Ryan McWreath of the Washington County Drug Task

Force filed a criminal complaint against Lance Rogers ("Petitioner"), through which Petitioner

was charged with one count of Possession with Intent to Deliver a Controlled Substance, 35 P.S.

§ 780-113(a)(30), an ungraded Felony; one count of Possession of a Controlled Substance, 35

P.S. § 780-113(a)(16), an ungraded Misdemeanor; one count of Possession of Drug

Paraphernalia, 35 P.S. § 780-113(a)(32), an ungraded Misdemeanor; and eleven counts of

1

Possession of a Firearm Prohibited, 18 Pa.C.S. § 6105(a)(1), a Felony of the Second Degree. That same day, Petitioner was arraigned by Magisterial District Judge Robert Redlinger and his bail was set at $35,000, which Petitioner promptly posted. Following a preliminary hearing held on November 2, 2018, the aforementioned charges were held for court.

On November 27, 2018, Assistant District Attorney Rachel Wheeler ("Ms. Wheeler"), on behalf of the Commonwealth, filed a motion to revoke or modify Petitioner's bail, which was subsequently granted by this Court. Accordingly, Petitioner's bail was revoked, and he was remanded to the Washington County Correctional Facility.

Thereafter, on December 19, 2018, the Commonwealth filed a Bill of Information against Petitioner, through which the Commonwealth charged Petitioner with eleven counts of Possession of a Firearm Prohibited, 18 Pa.C.S. § 6105(a)(1), a Felony of the Second Degree; one count of Possession with Intent to Deliver a Controlled Substance, 35 P.S. § 780-113(a)(30), an ungraded Felony; one count of Possession of a Controlled Substance, 35 P.S. § 780-113(a)(16), an ungraded Misdemeanor; and one count of Possession of Drug Paraphernalia, 35 P.S. § 780-113(a)(32), an ungraded Misdemeanor.

Approximately two months later, on February 4, 2019, the Commonwealth filed a motion to amend the Bill of Information, which was granted by this Court on February 7, 2019. Pursuant to the amended Bill of Information filed on February 11, 2019, Petitioner was charged with the following: Counts 1-11, Possession of a Firearm Prohibited, 18 Pa.C.S. § 6105(a)(1), a Felony of the Second Degree; Counts 12-22, Possession of a Firearm Prohibited, 18 Pa.C.S. § 6105(a)(1), a

Felony of the First Degree;[1] Count 23, Possession with Intent to Deliver a Controlled Substance, namely a mixture of heroin, fentanyl, FUB-144, and tramadol, 35 P.S. § 780-113(a)(30), an ungraded Felony; Count 24, Possession of a Controlled Substance, namely a mixture of heroin, fentanyl, FUB-144, and tramadol, 35 P.S. § 780-113(a)(16), an ungraded Misdemeanor; and Count 25, Possession of Drug Paraphernalia, namely stamp bags, 35 P.S. § 780-113(a)(32), an ungraded Misdemeanor.

On February 25, 2019, Blackwell and Associates, specifically Christopher Blackwell, Esquire, ("Mr. Blackwell"), entered his appearance on behalf of Petitioner.

Thereafter, on April 24, 2019, Peter Marcoline III, Esquire, ("Mr. Marcoline"), on behalf of Blackwell and Associates, filed an Omnibus Pretrial Motion which contained, *inter alia*, a Motion to Suppress, Petition for Writ of Habeas Corpus, and a Petition to Compel Disclosure of Confidential Informants. Following a hearing held thereon on July 12, 2019, the Court denied Petitioner's Omnibus Pretrial Motion in its entirety and scheduled Petitioner to appear for plea court on August 13, 2019. At that time, Petitioner requested a jury trial during the October 2019 trial term.

Petitioner's jury trial commenced on October 29, 2019, and lasted a total of four days. At the conclusion of the trial on November 1, 2019, Petitioner was found guilty of possessing the Diamondback 5.56, the Smith and Wesson Model M&P long rifle, the Glock 35, the Witness 45, the Ruger P95 9.mm, the Hi-Point, the Colt Frontier, the Smith and Wesson Interarms, the Taurus Curve, and the Smith and Wesson Bodyguard, which corresponded to Counts 1-8 and

---

[1] A total of eleven firearms were seized in this matter, namely, a Diamondback 5.56, Smith and Wesson Model M&P .22. long rifle, Glock 35, Witness 45, Ruger P95 9.mm, Hi-Point, Colt Frontier, Smith and Wesson Interarms, Sig Sauer, Taurus Curve, and a Smith and Wesson Bodyguard. Counts 1-11 of the amended Bill of Information graded the possession of said firearms as a Felony of the Second Degree, whereas Counts 12-22 graded the possession of the same firearms as a Felony of the First Degree.

Counts 10-11, respectively. Additionally, because the jury also found that at the time Petitioner committed the offenses, he was in the physical possession or control of the aforementioned firearms, Petitioner was ultimately convicted of Counts 12-19 and Counts 21-22, making the offenses Felonies of the First Degree. The jury also found Petitioner guilty of Possession with Intent to Deliver a Controlled Substance, Possession of a Controlled Substance, and Possession of Drug Paraphernalia, which were Counts 23-25, respectively. Petitioner was found not guilty of possessing the Sig Sauer firearm, which corresponded to Count 9 and Count 20.

On January 31, 2020, the Court sentenced Petitioner to an aggregate term of no less than twenty years to no more than forty years in an appropriate state correctional institution. Thereafter, on February 13, 2020, Mr. Marcoline, on behalf of Blackwell and Associates, withdrew as Petitioner's counsel.

Following the withdrawal of Mr. Marcoline as counsel for Petitioner, Adam Yarussi, Esquire, of the Washington County Public Defender's Office, filed a Notice of Appeal on February 24, 2020, and entered his appearance on Petitioner's behalf on February 26, 2020. This Court then directed Petitioner to file a Concise Statement of Matters Complained of on Appeal in accordance with Pa.R.A.P. 1925(b). Following an extension granted by this Court, Petitioner filed his Concise Statement on April 7, 2020, as well as an Amended Concise Statement on April 8, 2020. Thereafter, pursuant to Pa.R.A.P. 1925(a), this Court filed its opinion regarding Petitioner's appeal.

In a memorandum filed on July 30, 2021, the Superior Court of Pennsylvania affirmed Petitioner's judgement of sentence and accordingly, denied his appeal. Petitioner did not seek allocatur review at the Supreme Court of Pennsylvania.

4

On February 7, 2022, Petitioner filed a *pro se* Motion for Post Conviction Collateral Relief. Following the filing of Petitioner's Post Conviction Relief Act ("PCRA") petition, this Court appointed Corrie Woods, Esquire, ("Mr. Woods") to represent Petitioner throughout his PCRA proceedings and direct Mr. Woods to file an amended PCRA petition or a *Turner/Finley* no-merit letter by April 4, 2022. Following a number of extensions, Mr. Woods filed an amended PCRA petition on January 4, 2023. Thereafter, this Court directed the Commonwealth to file an answer to Petitioner's amended PCRA petition by March 13, 2023, which the Commonwealth timely filed.

Based upon the pleadings submitted by both parties, the Court scheduled an evidentiary hearing on Petitioner's amended PCRA petition for June 22, 2023. Following said hearing, the Court directed both parties to file briefs within thirty days following the filing of the official transcript of the hearing. The official transcript of the evidentiary hearing was filed on July 19, 2023. Thereafter, both parties timely submitted their respective briefs.

## LEGAL ANALYSIS

As a preliminary matter, in order for this Court to have jurisdiction to entertain Petitioner's PCRA petition, the petition must comport with the timing requirements of the PCRA. The PCRA provides, in pertinent part, that, "[a]ny petition [filed pursuant to the PCRA]...shall be filed within one year of the date the judgement [of sentence] becomes final." 42 Pa.C.S. § 9545(b)(1). A judgement of sentence becomes final, "at the conclusion of direct review...or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

In the present matter, following his conviction and the entry of this Court's judgment of sentence, Petitioner pursued a timely direct appeal to the Superior Court of Pennsylvania on February 24, 2020. Thereafter, in a memorandum filed on July 30, 2021, the Superior Court of

5

Pennsylvania denied Petitioner's appeal, affirming his judgment of sentence. Following his unfruitful direct appeal to the Superior Court of Pennsylvania, Petitioner chose to forgo seeking allocatur review at the Supreme Court of Pennsylvania. Accordingly, Petitioner's judgment of sentence became final on August 30, 2021, when the thirty-day period for filing a petition for allowance of appeal with the Supreme Court of Pennsylvania expired. *See* 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 1113.[2] As such, Petitioner had one year from that date, or until August 30, 2022, to file a timely PCRA petition. Having filed his *pro se* PCRA petition on February 7, 2022, Petitioner's PCRA petition is evidently timely; therefore, this Court has jurisdiction to entertain the claims raised by Petitioner therein.

In addition to satisfying the jurisdictional requirements of the PCRA, for a petitioner to be eligible for relief under the Act, he must also satisfy the requirements of eligibility set forth in Section 9543(a) of the PCRA. Said eligibility provisions require that a petitioner plead and prove, by a preponderance of the evidence, that he has been convicted of a crime for which he is currently serving a sentence for, and that the conviction came as a result of one of the enumerated grounds for relief. 42 Pa.C.S. § 9543(a)(1)(i); 42 Pa.C.S. § 9543(a)(2). Here, as the Court has previously outlined, Petitioner was convicted of numerous offenses, namely Possession of a Firearm Prohibited, Possession with Intent to Deliver a Controlled Substance, Possession of a Controlled Substance, and Possession of Drug Paraphernalia, for which he is currently serving an aggregate sentence of twenty years to forty years incarceration. Therefore, Petitioner satisfies the eligibility requirements insofar as they are outlined in Section 9543(a)(1)(i).

---

[2] Pa.R.A.P. 1113 states, in pertinent part, "a petition for allowance of appeal shall be filed with the Prothonotary of the Supreme Court within 30 days after the entry of the order of the Superior Court or the Commonwealth Court sought to be reviewed."

As briefly mentioned above, in addition to establishing that he was convicted of a crime for which he is currently serving a sentence for, a petitioner is further required to plead and prove that said conviction came as a result of one of the errors provided in Section 9543(a)(2)(i)-(viii). Relevant to the instant matter, Section 9543(a)(2)(ii) allows a petitioner to pursue relief where he has received ineffective assistance of counsel.[3] It is precisely upon this subsection that Petitioner avers that he is entitled to relief under the PCRA.

However, a petitioner is unable to raise issues in his PCRA petition that have already been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). An issue is waived in the context of the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state postconviction proceeding." 42 Pa.C.S. § 9543(a)(4). While Petitioner did not raise the issue of ineffective assistance of counsel during the pursuit of his direct appeal, Petitioner's failure to do so does not amount to a waiver for purposes of the PCRA. In the absence of specific circumstances, none of which are present here, claims of ineffective assistance of counsel are deferred solely to PCRA review, and are not to be entertained in any post-verdict motions or reviewed upon direct appeal. *Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013).[4] Accordingly, Petitioner's failure to raise the instant claim of ineffective assistance of counsel on direct appeal, or at an earlier juncture in the proceedings, does not prove fatal to his instant PCRA petition, as the PCRA is the proper and sole vehicle through which an individual may raise such an issue.

---

[3] Section 9543(a)(2)(ii) of the PCRA states, in pertinent part, that to be eligible for relief, the petitioner must show, by a preponderance of the evidence, that his conviction resulted from, "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilty or innocence could have taken place."

[4] In *Commonwealth v. Holmes*, the Supreme Court of Pennsylvania provided examples of specific circumstances that would allow for courts to consider ineffective assistance of counsel claims in post-verdict motions or on direct appeal. These circumstances generally have been limited to instances in which a defendant attempted to litigate multiple claims of ineffective assistance of counsel *and* where the defendant has knowingly and expressly waived his right to PCRA review. Such a waiver is not present in the instant matter.

7

Having established that Petitioner has satisfied both the jurisdictional and eligibility requirements of the PCRA and has not waived the present claim he is now raising through his PCRA petition, the Court next turns its attention towards assessing the merits of Petitioner's claim itself.

In his Amended PCRA petition, Petitioner raises a singular, overarching claim of ineffective assistance of counsel premised around Mr. Marcoline's alleged failure to provide adequate advice regarding the plea offers tendered by the Commonwealth. *See* Amended Petition for Relief Pursuant to the Post Conviction Relief Act. Specifically, Petitioner alleges that Mr. Marcoline provided ineffective counsel due to his failure to, "adequately communicate to [Petitioner] the strength of the Commonwealth's case, the risks and potential outcomes at trial, and...the risks and potential outcomes that trial would give rise to at sentencing." *Id.* Petitioner further avers that had Mr. Marcoline adequately apprised Petitioner of the aforementioned information, Petitioner would have foregone proceeding to trial and instead, would have opted to accept the Commonwealth's plea offer. *Id.*

As a general rule, it is presumed that a petitioner has received effective counsel. *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (internal citations omitted); *See also Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007) (internal citations omitted). Thus, a court's assessment of a petitioner's claim of ineffective assistance of counsel must be "highly deferential[.]" *Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa. Super. 2005) (internal citations omitted). In order for a petitioner to rebut this presumption, a petitioner seeking relief on the grounds that he received ineffective assistance of counsel must satisfy the three-prong test set forth by the Supreme Court of Pennsylvania in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). *Wholaver*, 177 A3d at 144. Under the *Pierce* test, a petitioner must establish that:

8

(1) the underlying substantive claim has arguable merit;
(2) counsel did not have a reasonable basis for his or her act or omission; and
(3) the petitioner suffered prejudice as a result of counsel's deficient performance.

*Id.* If the petitioner fails to satisfy any one of the prongs of the *Pierce* test, the entire claim will fail. *Commonwealth v. Smith*, 181 A.3d 1168, 1174-75 (Pa. Super. 2018) (internal citations omitted).

When assessing a Petitioner's claim of ineffective assistance of counsel, the threshold inquiry that the Court must explore is, "whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[,]" for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa. Super. 2021) (internal citations omitted). If the petitioner satisfies this initial threshold, the Court then must proceed to determine whether the decisions of counsel had some reasonable basis. *Id.* If a reasonable basis is found, the inquiry ends, and counsel's assistance is deemed effective. *Id.* However, if the Court finds that no reasonable basis for counsel's decisions existed, the petitioner must then demonstrate that he was prejudiced by the ineffectiveness of counsel. *Commonwealth v. Edwards*, 762 A.2d 382, 390 (Pa. Super. 2000) (internal citations omitted). For a petitioner to establish prejudice, he must show that there is a reasonable probability that, but for counsel's ineffectiveness, the result of the proceeding would have been different. *Commonwealth v. Chambers*, 807 A.2d 872, 883 (Pa. 2002) (internal citations omitted). Pennsylvania courts have defined a "reasonable probability" to be a "probability sufficient to undermine confidence in the outcome." *Id.*

As previously noted, Petitioner advances numerous grounds in support of his overarching claim of ineffective assistance of counsel on the part of Mr. Marcoline. For

9

purposes of its discussion, the Court shall address each ground in support of Petitioner's ineffectiveness claim independently.

## I. Failure to Adequately Communicate the Strength of the Commonwealth's Case

To support his claim of ineffective assistance of counsel, Petitioner first contends that Mr. Marcoline failed to adequately apprise Petitioner of the strengths of the Commonwealth's case against him, and thus, failed to provide adequate advice to Petitioner regarding the benefits of accepting the Commonwealth's plea offer. *See* Amended Petition for Relief Pursuant to the Post Conviction Relief Act. Such a contention, however, is without merit.

The record in this matter, including the testimony presented by both Petitioner and Mr. Marcoline at the evidentiary hearing, firmly establishes that Petitioner was well-informed of the strength of the Commonwealth's case against him, including the Commonwealth's evidence, as disclosed through discovery, along with any potential defenses and their viability at trial. As adduced through the testimony at the evidentiary hearing, Mr. Marcoline met with Petitioner, in person, to discuss discovery on multiple occasions. Evidentiary Hrg. Tr., 6/22/23 at 9:13-10:5; 68:23-69:20. As Petitioner stated on direct examination, "[w]ell, it was, like, maybe, like, three times he did come and we sat down and we went over the discovery and he was telling me about what all they found[.]" *Id.* at 9:20-23. Later, on cross-examination, Petitioner reiterated the fact that Mr. Marcoline apprised him of the discovery in the matter, as evidenced through the foregoing exchange:

> Ms. Wheeler: Okay. Let's do it this way. You said Mr. Marcoline came and met with you in person at the jail two or three times; right?
>
> Petitioner: Yes.
>
> Ms. Wheeler: Okay. What do you remember about those meetings?

10

Petitioner: Well, one, like I said, was when we had the meeting downstairs and he was talking to me about the discovery and basically, once again, the guns could hurt me. And then another time is when he came -- well, the first and only time I can remember, that I do remember is when he brought the paper saying the 10 and a half to 21 years. That's what you could potentially offer me or whatever the case may be. And then he came back when the discovery came. That's when he was downstairs and he talked about that, and then the third time is when he said that you guys had an offer of 13 to 26 years. Everything else he was saying to me, I can't remember half of -- I don't know law. I don't understand it. If it wasn't saying nothing about me going home to my kids, it was a blank.

Ms. Wheeler: Okay. So let's start at where you said you remember beginning. So Mr. Marcoline came over and you said he discussed with you your discovery; correct?

Petitioner: Correct.

*Id.* at 40:19-41:22.

In addition to Petitioner's testimony concerning his discussion with Mr. Marcoline regarding discovery and the Commonwealth's evidence, Mr. Marcoline provided credible testimony further establishing that he adequately advised Petitioner of the discovery in the matter, necessarily then informing Petitioner of the strength of the Commonwealth's case. As reflected in Mr. Marcoline's testimony, he and Mr. Blackwell, through multiple letters, sent Petitioner the discovery packets that had been provided to them by the Commonwealth. Evidentiary Hrg. Tr., 6/22/23 at 70:8-19. One such letter was admitted at the evidentiary hearing in this matter, in which Mr. Blackwell informed Petitioner of the DNA analysis report pertaining to two of the firearms and their respective magazines, ultimately informing Petitioner that "[he] cannot be excluded as a potential individual that could have contributed to this DNA[]" and that the results of the DNA analysis were adverse to Petitioner's case. *See* Commonwealth Exhibit 11.

11

On direct examination, Mr. Marcoline elaborated on the extensive discovery that he had shared with Petitioner:

> Ms. Wheeler: Okay. So could you just briefly explain to us the discovery, what all did it include, just in general?
>
> Mr. Marcoline: One of the major issues in this case was photos and videos taken off of [Petitioner's] personal cell phone. If I recall correctly, those were played at the bond hearing, but I know they were played at trial. There was also text messages that were ultimately extracted from his phone, lab reports, DNA. There were also latent fingerprint reports from the state police. The videos, text messages, drug lab and controlled substances that were found. Police reports, investigative details from the multiple investigators that were at the home on the date of the search warrant and seizure of the items. So all of that information was included in the discovery packet[.]

Evidentiary Hrg. Tr., 6/22/23 at 70:20-71:14.

Mr. Marcoline further credibly testified that he had discussed the aforementioned discovery "[i]n detail" with Petitioner, precisely recalling a specific meeting in which he discussed the discovery in-person with Petitioner on August 12, 2019. Evidentiary Hrg. Tr., 6/22/23 at 72:16-21. As reflected by Mr. Marcoline's notes from said meeting, Mr. Marcoline informed Petitioner of the strength of the Commonwealth's case in relation to the videos contained in the discovery packets, specifically noting that he told Petitioner that the videos were the "most damaging" evidence. *See* Commonwealth Exhibit 6.

In addition to thoroughly discussing the discovery in the matter with Petitioner, the record from the evidentiary hearing further establishes that Mr. Marcoline fully informed Petitioner of any potential defenses, as well as their likelihood at trial. Petitioner, himself, indicated as much on direct examination:

> Mr. Woods: Did he talk to you about any potential defenses? For example, [the firearms] actually belonged to someone else. [The firearms] weren't yours and you didn't have control over them?

12

Petitioner: Yes.

Evidentiary Hrg. Tr., 6/22/23 at 10:6-10. With regards to the likelihood of success of any defensive strategies, Mr. Marcoline credibly testified that he informed Petitioner of the low likelihood of success in the event that Petitioner proceeded to trial:

> Ms. Wheeler: And that's why you indicated you told him this is the most damaging?
>
> Mr. Marcoline: Yes.
>
> Ms. Wheeler: And you were telling him that because of why?
>
> Mr. Marcoline: Because the prospects of going to trial and winning on this case I didn't think were great.
>
> Ms. Wheeler: Did you tell him that?
>
> Mr. Marcoline: Yes.

*Id.* at 88:4-12.

Along with being apprised of the strengths of the Commonwealth's case through discussions with Mr. Marcoline, Petitioner, himself, was personally made aware of the strength of the Commonwealth's case through his presence at multiple hearings and the dissemination of discovery directly to him at the outset of the proceedings. Specifically, Petitioner was present for and provided testimony at a bond revocation hearing held in this matter on November 30, 2018. Evidentiary Hrg. Tr., 25:21-26:12; 27:11-16; *See* Commonwealth Exhibit 1. At the bond revocation hearing, the Commonwealth admitted numerous exhibits, including photographs of various firearms, many of which depicted Petitioner with the firearms. Evidentiary Hrg. Tr., 6/22/23 at 27:17-22; *See* Commonwealth Exhibit 1. In addition to said exhibits, Detective Ryan McWreath provided testimony at the bond revocation hearing regarding the Commonwealth's evidence as it related to the controlled substance charges against Petitioner, as well as a

13

statement made by Petitioner in which he took ownership of the controlled substances. Evidentiary Hrg. Tr., 6/22/23 at 28:4-11; *See* Commonwealth Exhibit 1.

Later down the line, on July 10, 2019, Petitioner was present for a hearing on his Omnibus Pretrial Motion. Evidentiary Hrg. Tr., 6/22/23 at 30:3-31:8; 31:24-32:3. *See* Commonwealth Exhibit 2. Similarly to the bond revocation hearing, Petitioner was again made fully aware of the Commonwealth's evidence in this matter through his presence at the Omnibus Pretrial Motion hearing where the Commonwealth admitted as exhibits two search warrants, numerous photographs which depicted, *inter alia*, firearms, their respective cases, ammunition, Petitioner's Pennsylvania identification card, and a photograph inside of Petitioner's residence, as well as lab report results regarding the controlled substances seized in the matter.[5] Evidentiary Hrg. Tr., 6/22/23 at 31:16:23; *See* Commonwealth Exhibit 2. Along with the presentation and admission of the aforementioned exhibits, Detective McWreath, again, provided testimony regarding, generally, the Commonwealth's case against Petitioner, which included the evidence that had been seized from Petitioner's residence along with statements made by Petitioner whereby he took ownership of the firearms and the controlled substances that were discovered. Evidentiary Hrg. Tr., 6/22/23 at 32:4-17; *See* Commonwealth Exhibit 2.

Lastly, Petitioner was personally provided with a majority of the discovery in this matter prior to Mr. Marcoline and Mr. Blackwell entering their appearances on his behalf, as evidenced by the letter sent by Ms. Wheeler to Petitioner on February 4, 2019. *See* Commonwealth Exhibit 3.

---

[5] Videos that had been obtained from Petitioner's cellphone were also played during the hearing on his Omnibus Pretrial Motion. Said videos depicted Petitioner holding the firearms at issue. Evidentiary Hrg. Tr., 6/22/23 at 32:18-24.

14

As evidenced by the aforementioned testimony and exhibits, Petitioner was well and fully aware of the strength of the Commonwealth's case against him. Mr. Marcoline's credible testimony firmly established that he discussed the discovery in this matter on numerous occasions with Petitioner, physically meeting him in-person on at least one occasion to do so. Not only did Mr. Marcoline meet with Petitioner to discuss discovery with him, but he also conferred to Petitioner the damaging nature of the discovery, along with any potential defenses that were available to Petitioner, as well as his candid opinion about the relative unlikelihood of success at trial in light of the Commonwealth's evidence. In fact, Petitioner testified to a similar effect, specifically stating that he had discussed discovery with Mr. Marcoline and answering in the affirmative when asked if Mr. Marcoline had discussed potential defensive strategies with him. In any event, Petitioner was personally apprised of the strength of the Commonwealth's case on at least three occasions, namely, through his presence at the bond revocation hearing, the Omnibus Pretrial Motion hearing, and the direct delivery of discovery to Petitioner at an early juncture in the proceedings. Moreover, Petitioner's contention that he was not aware of the strength of the Commonwealth's case is curious in light of the following exchange at the evidentiary hearing:

> Ms. Wheeler: Okay. Was there any – considering the fact that you had attended all of these hearings and you had received discovery personally from us and also gone over it with your attorney and heard all of the testimony at these hearings, the Commonwealth's case was very clear to you; correct? You knew what we were alleging. You just disputed it; right?
>
> Petitioner: Yes.

Evidentiary Hrg. Tr., 6/22/23 at 59:22-60:6.

As such, for the aforementioned reasons, it is evident that Petitioner was fully informed of the strength of the Commonwealth's case, both through his own participation

15

in the matter, as well as through the thorough and extensive discussions with Mr. Marcoline. Thus, Petitioner's contention that Mr. Marcoline failed to adequately inform him of the strength of the Commonwealth's case lacks arguable merit and cannot serve as a basis for his claim of ineffective assistance of counsel.

## II.    Failure to Communicate the Risks and Potential Outcomes at Trial

Petitioner next contends that Mr. Marcoline failed to adequately communicate to him the risks and potential outcomes of proceeding to trial and as a result, failed to provide adequate advice to Petitioner regarding whether to accept the Commonwealth's plea offer. *See* Amended Petition for Relief Pursuant to the Post Conviction Relief Act. Petitioner's second alleged ground to support his claim of ineffective assistance of counsel, however, is also without merit.

At the evidentiary hearing, Mr. Marcoline provided credible testimony demonstrating that Petitioner was well-apprised of the risks associated with proceeding to trial, as well as the adverse outcomes that would be associated with a guilty verdict. As the Court previously discussed, Mr. Marcoline thoroughly and extensively discussed with Petitioner the Commonwealth's evidence in this case. Evidentiary Hrg. Tr., 6/22/23 at 9:13-10:5; 68:23-69:20; 70:8-72:21; *See also* Commonwealth Exhibit 6; Commonwealth Exhibit 11. Through such discussions, Petitioner evidently would have become acutely aware of the risks associated with proceeding to trial in the face of such evidence, specifically that it would be difficult to mount an effective defense. In fact, Mr. Marcoline informed Petitioner of the low likelihood of success at trial and the risk of proceeding, credibly testifying that, following his discussions regarding the discovery with Petitioner, particularly the videos of Petitioner with the firearms at issue, he expressly informed Petitioner that "the prospects

16

of going to trial and winning on this case I didn't think were great." Evidentiary Hrg. Tr., 6/22/23 at 88:4-12.

Additionally, Mr. Marcoline fully informed Petitioner of the elements of the offenses that the Commonwealth necessarily would have to prove at trial, as well as the concept of constructive possession. Evidentiary Hrg. Tr., 6/22/23 at 88:23-89:9. Mr. Marcoline credibly testified that, through such discussions, Petitioner understood that the firearms did not have to be registered to him for him to be convicted of possessing them, and as such, the risks of challenging the firearms charges at trial. *Id.* at 89:5-15.

Moreover, the record further reflects that Petitioner understood the ramifications that proceeding to trial would have on his subsequent sentencing if he were convicted, as evinced by the credible testimony of Mr. Marcoline at the evidentiary hearing:

> Ms. Wheeler: And did you go over what the potential risk of going to trial was as far as sentencing was concerned if he were convicted?
>
> Mr. Marcoline: Yes, I did.
>
> Ms. Wheeler: And did you discuss with [Petitioner] the fact that 13 to 26 years was significantly less than what he would be facing if he were convicted at trial?
>
> Mr. Marcoline: Yes, I did.

Evidentiary Hrg. Tr., 6/22/23 at 84:21-85:5.

Petitioner's understanding of the risks associated with proceeding to trial in the context of sentencing is further reinforced by a discussion that he had with Mr. Marcoline regarding an email sent to Mr. Marcoline and Mr. Blackwell by Ms. Wheeler on October 7, 2019. Said email thoroughly explained the Commonwealth's plea offer at the time, as well as the potential standard range sentence that Petitioner would be facing if he were to proceed to trial and be convicted. *See* Commonwealth Exhibit 5. Mr. Marcoline credibly testified that he visited

17

Petitioner, in-person, at the Washington County Correctional Facility to go over the contents of the email with him, including the sentencing risks associated with proceeding to trial. Evidentiary Hrg. Tr., 6/22/23 at 86:7-23. Through such a discussion, Petitioner would evidently have been made fully aware of the fact that the Commonwealth's offer was a steep discount as compared to the standard range sentence that Petitioner was facing. In addition, Petitioner would have also been apprised of the fact that, if he chose to proceed to trial, the Commonwealth was seeking to prove Felony of the First Degree Possession of a Firearm Prohibited, as compared to the plea offer whereby Petitioner would plead to Felonies of the Second Degree, thus further informing Petitioner of the risks associated with proceeding to trial. *See* Commonwealth Exhibit 5.

Thus, as the credible testimony of Mr. Marcoline establishes, Petitioner was fully informed of the risks associated with proceeding to trial, including the adverse consequences that a potential conviction would have on his subsequent sentencing. Through discussions with Mr. Marcoline, as well as his own personal observations, Petitioner was apprised of the evidence that the Commonwealth intended to present at trial, along with the damaging nature of such evidence. Following a review of the evidence, along with his discussions with Petitioner, Mr. Marcoline inevitably concluded that Petitioner's prospects at trial were not great and communicated his thoughts on the risky nature of proceeding to trial to Petitioner, including the fact that Petitioner would be facing a significantly lengthier sentence as compared to the Commonwealth's plea offer at the time if he were convicted.

While Petitioner now asserts that he would have accepted the Commonwealth's plea offer had he been fully informed of the risks and ramifications of going to trial, Petitioner's own testimony at the evidentiary hearing demonstrates that Petitioner made a fully informed decision

18

to proceed to trial, in light of the risks associated with such a decision, due to his as desire to preserve his right to appeal the denial of his Omnibus Pretrial Motion, along with his goal of challenging whether he possessed the firearms at issue. Specifically, Petitioner, on cross-examination, recounted why he ultimately chose to proceed to trial:

> Ms. Wheeler: Oh, did you not say earlier that you wanted to challenge whether you actually possessed the firearms?
>
> Petitioner: To authenticate some of those firearms, allegedly firearms, in the videos.
>
> Ms. Wheeler: I thought you said earlier that you absolutely were denying ownership or possession of any of those firearms and that's what you were challenging at trial?
>
> Petitioner: Correct.
>
> Ms. Wheeler: Okay. So that's not my words. Those are yours. And you also want to potentially appeal the judge's decision following trial; right?
>
> Petitioner: Yes.

Evidentiary Hrg. Tr., 6/22/23 at 58:7-20.

Mr. Marcoline's credible testimony further established Petitioner's own goals for nevertheless proceeding to trial, making it abundantly clear that Petitioner, throughout the entirety of the proceedings, was dissatisfied with the plea offers tendered by the Commonwealth. Specifically, Petitioner informed Mr. Marcoline that he refused to plead guilty to any of the firearms charges, that he would accept decades worth of probation, or a county sentence with electronic home monitoring with the privilege of work release, as evidenced through Mr. Marcoline's memorialization of an August 12, 2019 meeting with Petitioner. Evidentiary Hrg. Tr., 6/22/23 at 78:10-20; *See also* Commonwealth Exhibit 6. As such, Mr. Marcoline attempted to negotiate a more favorable plea agreement throughout the entirety of the proceedings, even including during jury selection, as evidenced by a note

19

passed between himself and Ms. Wheeler that day. Evidentiary Hrg. Tr., 6/22/23 at 90:3-91:16; *See also* Commonwealth Exhibit 7. Mr. Marcoline's credible testimony also echoed Petitioner's stated desire to appeal the Court's denial of his Omnibus Pretrial Motion, a right that could only be effectuated through proceeding to trial. Evidentiary Hrg. Tr., 6/22/23 at 76:4-77:8; 123:4-125:3.

Accordingly, for the aforementioned reasons, Petitioner's claim that Mr. Marcoline failed to adequately communicate the risks and potential outcomes of trial is without arguable merit and cannot serve as the basis for his claim of ineffective assistance of counsel.

III. Failure to Communicate the Risks and Potential Outcomes at Sentencing

Petitioner's third and final asserted ground in support of his ineffective assistance of counsel claim concerns his contention that Mr. Marcoline failed to fully communicate the risks and outcomes associated with sentencing, specifically, how proceeding to trial would impact Petitioner's sentencing exposure. *See* Amended Petitioner for Relief Pursuant to the Post Conviction Relief Act. Petitioner's third ground for relief, however, is without merit for the foregoing reasons.

While on direct examination, Mr. Marcoline credibly testified to the discussions that he had with Petitioner prior to trial regarding the Commonwealth's plea offers in this matter. The first plea that was offered to Petitioner amounted to an aggregate sentence of ten and one-half to twenty-one years incarceration. *See* Commonwealth Exhibit 8. Following an increase in the sentencing guidelines as a result of Petitioner's alleged delivery of fentanyl, the Commonwealth increased the plea offer, ultimately offering Petitioner an aggregate sentence of thirteen to twenty-six years incarceration. *See*

20

Commonwealth Exhibit 9. As evidenced by two letters sent to Petitioner by Mr. Marcoline, dated January 2, 2019 and January 31, 2019, respectively, both of the Commonwealth's plea offers were communicated to Petitioner. *See* Commonwealth Exhibit 8; Commonwealth Exhibit 9.

Along with communicating the Commonwealth's plea offers to Petitioner, Mr. Marcoline credibly testified that he discussed the Commonwealth's final plea offer, at length, with Petitioner, along with the standard range sentence under the sentencing guidelines, as well as the concept that Petitioner's sentences could be ran consecutive or concurrently. Specifically, Mr. Marcoline credibly stated the following on direct examination:

> Ms. Wheeler: So just as a summary, so you received a couple different offers from the Commonwealth. Did you convey both of those to [Petitioner]?
>
> Mr. Marcoline: Verbally, in writing, yes.
>
> Ms. Wheeler: Okay. And did you review the final offer with [Petitioner] in detail including standard range guidelines, consecutive, concurrent, all of those things?
>
> Mr. Marcoline: Specifically, the October 7th e-mail, 2019, from you to me where everything was listed, I went through that with him in person in preparation for trial, but even before that I had already had several meetings with him at the correctional facility and in the courtroom where we were going over the number of charges contained within the criminal information, their grading. I mean, it is what it is. They're listed right there in the standard ranges for all of the charges. Multiple occasions that was gone through in person with [Petitioner] not only verbally, in person and in writing.

Evidentiary Hrg. Tr., 6/22/23 at 102:18-103:14.

Moreover, Mr. Marcoline's credible testimony at the evidentiary hearing made it wholly clear that Petitioner understood that he faced greater sentencing exposure, including having his sentences ran consecutively, if he proceeded to trial and was convicted:

> Mr. Marcoline: Well, specifically, we went through what the plea offer was and the fact that the Commonwealth was seeking consecutive sentences to formulate a 13 to 26-year plea offer. I also went through with him if he were to go to trial and were to get convicted of multiple offenses that it would be entirely up to the discretion of Judge Costanzo whether or not he could receive concurrent or consecutive sentences. Even at the sentencing hearing on [Petitioner's] behalf, I was still arguing for concurrent sentences on all of the charges based on the fact it was a singular conviction. I went through all of that with [Petitioner] prior to jury selection ever beginning and in preparation for trial that if this goes south and you get convicted, we are going to have to argue for concurrent sentences because this was one incident, one time, one search of the residence.

Evidentiary Hrg. Tr., 6/22/23 at 109:4-20. Mr. Marcoline further expounded upon his discussions with Petitioner regarding the potential sentencing outcomes, stating that:

> Mr. Marcoline: He understood clearly that if he gets convicted of multiple offences the judge could give him – I went through it, you know, you get three to six on this plus three to six, plus three to six, for all, if I recall correctly, a total of 11 firearms. He was advised that each firearm, if he is convicted of that offense, he could get a standard range sentence of 3 to 6 years on each, which would result at that point 33 to 66 years just on the guns.

*Id.* at 110:15-23. Based upon these discussions with Petitioner, Mr. Marcoline credibly testified that "I have no doubt in my mind that he understands the difference between concurrent and consecutive sentences because he was asking me to see if I can get him concurrent sentences on some of his charges." *Id.* at 111:15-19.

Therefore, as Mr. Marcoline's testimony evidences, Petitioner was well informed and understood the potential adverse sentencing outcomes associated with proceeding to trial. Having discussed the Commonwealth's plea offer with Mr. Marcoline, in detail, along with Mr. Marcoline's explanation of the sentencing guideline ranges and the concept of

22

running a sentence concurrently or consecutively, Petitioner was fully aware of the fact that the Commonwealth's plea offer represented a discount as compared to what he would face in the event that he proceeded to trial, was convicted, and had his sentence fashioned by the Court. In fact, Petitioner's understanding of the fact that his sentences could be ran consecutively was further demonstrated through his testimony at the evidentiary hearing, when Petitioner stated that he discussed with Mr. Marcoline the potential of having his sentences ran concurrently as a means of getting his aggregate sentence lowered. Evidentiary Hrg. Tr., 6/22/23 at 48:18-24. Furthermore, as Mr. Marcoline's credible testimony reflected, Petitioner was also informed, through his discussions with Mr. Marcoline, of precisely how long his aggregate sentence could amount to if he proceeded to trial. As such, Petitioner's contention that he had not been fully apprised of the sentencing risks associated with proceeding to trial is without arguable merit and is demonstrative of a last-ditch effort on Petitioner's part to combat a sentence that he is dissatisfied with on whatever grounds possible, as is reflected by the following testimony at the evidentiary hearing:

> Ms. Wheeler: Okay. Let me rephrase my question. My question is you said you knew the risk of going to trial, that you thought there is a potential I could get 15 to 30. So I'm saying if you would have gotten 15 to 30 instead of 20 to 40, would you still be challenging this?
>
> Petitioner: No.

Evidentiary Hrg. Tr., 6/22/23 at 64:22-65:5.

Accordingly, for the aforementioned reasons, Petitioner has failed to satisfy the *Pierce* test, as his claim of ineffective assistance of counsel, and the grounds in support thereof, are without arguable merit.

23

## CONCLUSION

Based on the above analysis of Petitioner's Amended Petition for Relief Pursuant to the Post Conviction Relief Act, the testimony presented at the evidentiary hearing on June 22, 2023, the official record, and upon consideration of the respective briefs submitted by the parties, Petitioner's Amended Petitioner for Relief Pursuant to the Post Conviction Relief Act is DENIED.

BY THE COURT:

_____
VALARIE COSTANZO, JUDGE

24